UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

ANDREA ROSSBACH,

Plaintiff,

-v-

MONTEFIORE MEDICAL CENTER, NORMAN MORALES, and PATRICIA VEINTIMILLA,

Defendants.

---------------------------------------- X

19cv5758 (DLC)

OPINION AND ORDER

APPEARANCES

For plaintiff Andrea Rossbach:
Daniel Altaras
Derek Smith Law Group, PLLC
One Penn Plaza
Suite 4905
New York, NY 10119

For defendants Montefiore Medical Center, Norman Morales, and Patricia Veintimilla:
Jean L. Schmidt
Nina Massen
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

Plaintiff Andrea Rossbach brings this employment discrimination case against her former employer, Montefiore Medical Center ("Montefiore") and her former colleagues at Montefiore, Norman Morales and Patricia Veintimilla, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec.

Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"). Rossbach principally alleges that she was sexually harassed by defendant Morales and fired after she objected to his misbehavior. The defendants have moved for summary judgment on many but not all of the claims, pursuant to Rule 56, Fed. R. Civ. P. For the following reasons, the motion for summary judgment is granted in part.

## Background

The following facts are undisputed or taken in the light most favorable to Rossbach, unless otherwise noted.

Rossbach is a registered nurse. In 2014, Montefiore hired her to work in the emergency department of the Children's Hospital at Montefiore ("CHAM"), a hospital in the Montefiore system. Almost immediately, Morales, who worked as the Interim Administrative Nurse Manager in the CHAM emergency department, began making unwanted sexual comments to Rossbach. In March 2017, Rossbach transferred to the day shift and Morales became her direct supervisor. At this point, Morales also began to subject her to unwanted physical contact. For instance, in April 2017, Morales rubbed Rossbach's shoulders; in June 2017, Morales attempted to force Rossbach to sit on his lap; and in

September and November 2017, Morales groped Rossbach. When Morales engaged in this conduct, Rossbach objected.

In September 2017, Morales made a sexual gesture to Rossbach in front of Veintimilla. In response, Rossbach asked Veintimilla if Morales was "always like this or just to [her]." [1] Veintimilla gave Rossbach a "dirty look and an eye roll" and walked away. Veintimilla, who was also a registered nurse, worked as the patient care coordinator in the CHAM emergency department. Veintimilla was responsible for assigning Rossbach's schedule and duties within the CHAM emergency department.

In November 2017, Veintimilla told Rossbach that she was having an affair with Morales and that she was jealous of Rossbach because Morales often flirted with Rossbach in front of her. After that encounter, on November 28, Veintimilla offered Rossbach a brownie. Rossbach ate the brownie the following day and became ill. Rossbach confronted Veintimilla on November 30, and Veintimilla told her that the brownie contained marijuana.[2]

On December 7, Rossbach was assigned to work an overtime shift. During that shift, Veintimilla reported to CHAM

[1] Veintimilla denies that Rossbach ever complained to her about Morales' conduct. She also denies that she ever witnessed any sexual or inappropriate conduct by Morales directed at Rossbach.

[2] Veintimilla denies that she gave Rossbach a brownie containing marijuana.

management that Rossbach was exhibiting behavior, including lethargy, suggesting she might be under the influence of drugs. Upon receiving this report, the director of emergency services at CHAM contacted the senior labor and employee relations manager at CHAM. Rossbach was then escorted to Montefiore's Occupational Health Services ("OHS") department to undergo a fitness for duty evaluation.

Montefiore maintains a drug and alcohol policy, under which an employee who "reports to work under the influence of alcohol or illegal drugs will be disciplined up to and including immediate discharge." In accordance with Montefiore's drug and alcohol policy, Charles Fithian, an operations manager, completed a fitness for duty observation form documenting Rossbach's condition. The form states that Rossbach was "unable to focus on job," was "not making eye contact," and that her "hands [were] shaking." The form further notes that Rossbach had been "pulled off [the] floor by [the] charge nurse for [the] same behavior" within the past year.

Dr. Susan Hacker, a Montefiore physician, then conducted Rossbach's fitness for duty evaluation. During the examination, Rossbach told Dr. Hacker that she had a prescription for Adderall to treat attention deficit disorder. Dr. Hacker's record of her examination of Rossbach indicates that she

assessed Rossbach as alert and oriented, but that Rossbach appeared agitated, fidgety, and upset during the examination. Dr. Hacker concluded that Rossbach should be drug tested and Rossbach provided a urine sample for testing. Rossbach was then ordered to return to the OHS clinic for further evaluation the following morning, and to bring her Adderall prescription. That evening, Rossbach was instructed not to return to work until her drug test results had been reviewed by OHS. The following morning, Rossbach returned to OHS and presented prescriptions for Adderall and Xanax.

On December 18, Dr. Hacker informed Rossbach that she had tested positive for Adderall, Xanax, marijuana and the synthetic opiate Tramadol. Rossbach told Dr. Hacker that the Tramadol had been prescribed to her mother, and that her mother had given her the Tramadol. Dr. Hacker then asked Rossbach to undergo a second drug test. The results of this test, which were received on January 2, 2018, were negative for marijuana.

At a meeting on January 5, 2018 with three other Montefiore employees, Morales gave Rossbach a discipline notice. The discipline notice informed her that she had been discharged for violating Montefiore's drug and alcohol policy.

In September 2018, Rossbach filed a complaint with the Equal Employment Opportunity Commission, which was subsequently

transferred to the New York State Division of Human Rights. In her complaint, Rossbach alleged that she had been sexually harassed by Morales and that she had tested positive for marijuana because she had eaten a brownie containing marijuana that had been provided to her by Veintimilla.

Rossbach filed this lawsuit on June 19, 2019. In broad strokes, Rossbach brings gender discrimination, retaliatory firing, and hostile work environment claims. After the parties completed discovery, defendants moved for partial summary judgment on November 20, 2020. The motion principally addresses the claims for gender discrimination and retaliation. The motion became fully submitted on January 19, 2021.

## Discussion

A motion for summary judgment may only be granted if all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). The moving party must demonstrate the absence of a material factual question, and in

making this determination, the court must view all facts in the light most favorable to the non-moving party. See id. In making this determination, the court "draws all inferences in favor of the nonmoving party." Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015).

"Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party may rely neither "on conclusory statements or on contentions that the affidavits supporting the motion are not credible," CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d Cir. 2020) (citation omitted), nor on "mere speculation or conjecture as to the true nature of the facts," Fed. Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) (citation omitted).

## I. Sex Discrimination Claims

Rossbach alleges that her firing by Montefiore constituted sex discrimination under Title VII, the NYSHRL, and the NYCHRL. Montefiore has moved for summary judgment on Rossbach's claims under all three statutes, while Morales and Veintimilla have moved for summary judgment on her claims under the NYSHRL and

the NYCHRL.[3] For the following reasons, the defendants' motions for summary judgment on Rossbach's sex discrimination claims are granted.

A. Title VII and the NYSHRL

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, the NYSHRL prohibits an "employer . . . because of an individual's . . . sex . . . [from] discharg[ing] from employment such individual." N.Y. Exec. Law § 296(1)(a). Claims of discrimination prohibited by Title VII are analyzed in accordance with the burden-shifting framework set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). NYSHRL claims are analyzed "according to the same standards" applied to Title VII claims. Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74-75 (2d Cir. 2016) (citation omitted).

Under the McDonnell Douglas burden-shifting framework, a sex discrimination plaintiff must first establish a prima facie case of discriminatory discharge "by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and

[3] The plaintiff has brought her Title VII claims solely against Montefiore. Title VII does not allow for claims against individuals. Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012).

(4) . . . the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019) (citation omitted). "If the plaintiff establishes a prima facie case, a presumption of discriminatory intent arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action." Id. (citation omitted). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted). At the final phase of the analysis, "the employee's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment decision was more likely than not based in whole or in part on discrimination." Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014) (citation omitted). This requires a showing that "the employer's explanation is a pretext for . . . discrimination." Id.

Assuming without deciding that Rossbach has met her de minimis burden of demonstrating a prima facie case of discrimination, defendants have set forth a legitimate non-discriminatory reason for Rossbach's discharge. Defendants have

provided evidence that Rossbach was fired after (1) she was ordered by CHAM management to undergo a fitness for duty evaluation after they received reports of her inappropriate behavior at work; (2) a Montefiore physician conducted a fitness for duty evaluation of Rossbach and concluded that a drug test was warranted; and (3) the drug test indicated a positive result for marijuana and non-prescribed Tramadol, indicating that Rossbach had likely violated Montefiore's drug and alcohol policy. As such, the burden shifts to Rossbach to prove that this reason for her discharge was pretextual. Rossbach raises several arguments as to why Montefiore's stated reason for firing her is pretextual, none of which is convincing.

First, Rossbach argues that she had not, in fact, exhibited any behaviors indicating that she was under the influence of drugs on the day she was sent for the fitness for duty evaluation. This argument misidentifies the relevant analysis. In employment discrimination cases involving allegations of misconduct by the employee, courts are "decidedly not interested in the truth of the allegations against plaintiff," but instead "interested in what motivated the employer." McPherson v. N.Y.C. Dept. of Educ, 457 F.3d 211, 216 (2d Cir. 2006) (emphasis in original) (citation omitted). Therefore, it is not relevant whether she was, in fact, exhibiting signs of being under the

influence on the day in question. Montefiore management had received several reports that she appeared to be under the influence, as well as positive drug test results, and the relevant decision-makers were entitled to rely on those reports and those results in making the discharge decision.

Second, Rossbach argues that deviations from Montefiore policy regarding the investigation of employee misconduct indicate pretext on the part of Montefiore. Rossbach notes that only one supervisor filled out a Fitness for Duty Observation Form, while two observation forms are required by Montefiore policy, and that Rossbach's supervisor and the Montefiore Employee and Labor Relations department were not notified of the positive drug tests at the appropriate time. The Second Circuit has held that "departures from procedural regularity" by an employer "can raise a question as to the good faith of the process where the departure may reasonably affect the decision." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 1997) (citation omitted). But here, any departure from procedural regularity was minor and immaterial. Given the evidence of Rossbach's violation of Montefiore policy -- including the determination by a physician that a drug test was appropriate and the positive drug tests -- no reasonable jury

could find that the departures from policy to which Rossbach points affected the ultimate decision to fire Rossbach.

Third, Rossbach contends that Montefiore's handling of her positive marijuana test demonstrates pretext. Rossbach suggests that the supervisor responsible for her firing failed to follow up with OHS regarding her positive marijuana test, and that if the supervisor had done so, she would have learned that a follow-up marijuana test was negative. She also argues that certain comments made regarding the marijuana test during the deposition of Dr. Hacker of OHS indicate certain irregularities surrounding her discharge. These contentions do not defeat summary judgment, because even if they are true, Rossbach's positive Tramadol test served as an independent basis for her firing.

Rossbach also argues that Montefiore's decision to immediately fire her after the positive drug test indicates pretext, because the Montefiore policy contemplates progressive discipline for drug and alcohol violations. But this argument misstates the plain text of the policy and Rossbach's history of misconduct. It is undisputed that the Montefiore policy allowed for immediate discharge after a single violation. Moreover, the fitness for duty form completed by Fithian indicates that

Rossbach had previously been relieved of duty for similar behavior in the year preceding the December 7, 2017 incident.

Finally, Rossbach argues that Montefiore is liable for Veintimilla's discriminatory conduct under the "cat's paw" theory of Title VII liability. The "cat's paw" theory allows for employer liability in "a situation in which an employee is fired . . . by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." Vasquez v. Empress Ambulance Serv., Inc., 835 F.3d 267, 272 (2d Cir. 2016) (citation omitted). Rossbach contends that Montefiore is liable under the "cat's paw" theory because it relied on Veintimilla's report in firing her, and Veintimilla was motivated by discriminatory animus.

This argument is unavailing. The "cat's paw" theory of liability only accrues if the employer "negligently relies on a low-level employee's false accusations in making an employment decision." Id. at 275. Here, Montefiore did not rely on Veintimilla's report in firing Rossbach: it conducted a process that involved an observational report by a different employee, a medical evaluation by a physician, and a drug test. As such, Montefiore cannot be held liable on a "cat's paw" theory, and the defendants are therefore entitled to summary judgment.

B. The NYCHRL

Rossbach has also brought gender discrimination claims under the NYCHRL. The NYCHRL prohibits any "employer or an employee or agent thereof" from "discharg[ing] from employment" any person "because of . . . gender." N.Y.C. Admin. Code § 8-107(1)(a). While the text of the NYCHRL is similar to that of Title VII and the NYSHRL, the law is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted). As a result, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." Id.

While the NYCHRL analysis must be conducted separately from any related Title VII and NYSHRL analysis, and the NYCHRL receives a broader construction, the NYCHRL analysis involves a similar burden-shifting framework. First, "the plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75-76 (2d Cir. 2015). If the defendant can provide a legitimate non-discriminatory reason for its actions, "summary judgment is appropriate if the record establishes as a matter of law that

discrimination or retaliation played no role in the defendant's actions." Id. at 76 (citation omitted).

In this case, summary judgment is warranted on Rossbach's NYCHRL gender discrimination claims stemming from her firing. As discussed above, the defendants have presented a legitimate, non-discriminatory reason for her discharge, and Rossbach has failed to demonstrate that this reason was pretextual or that this reason was not Montefiore's sole basis for taking action. Chen, 805 F.3d at 76. No reasonable jury could therefore find that gender-based discrimination played any role in Rossbach's firing.

## II. Hostile Work Environment Claims Against Veintimilla

Veintimilla moves for summary judgment on Rossbach's hostile work environment claims, brought under the NYSHRL and NYCHRL. For the following reasons, Veintimilla's motion for summary judgment is granted.

### A. NYSHRL

Hostile work environment claims under the NYSHRL are analyzed under the same principles that govern hostile work environment claims under Title VII. Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015). "A hostile work environment claim requires a plaintiff to show that his or her workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his or her employment were thereby altered." Agosto v. N.Y.C. Dep't of

Educ., 982 F.3d 86, 101 (2d Cir. 2020) (citation omitted). "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Id. at 101–02 (citation omitted). Importantly, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." Tolbert, 790 F.3d at 439.

In her submission, Rossbach makes three arguments as to why Veintimilla's conduct gave rise to a hostile work environment. First, she argues that Veintimilla created a hostile work environment by witnessing and ignoring Morales' sexual harassment. Second, she contends that Veintimilla told her that she was having an affair with Morales and that Veintimilla claimed she was jealous of her because Morales often flirted with Rossbach in front of Veintimilla. Third, she argues that Veintimilla often "ridiculed, mocked, and cursed" Rossbach and other female nurses.

None of these arguments are sufficient to survive Veintimilla's motion for summary judgment. In order to survive a motion for summary judgment, Rossbach must show not only that she was subjected to hostile conduct, but that the conduct

occurred because of her gender. Rossbach has not made that showing. The evidence put forward by Rossbach shows that Veintimilla's comment to Rossbach regarding her relationship with Morales, and her abuse of Rossbach and her female colleagues, was motivated by Veintimilla's relationship with Morales and her jealousy of those she perceived to be interfering with that relationship, not gender. Rossbach's hostile work environment claim is therefore a so-called "paramour preference" claim, which cannot give rise to hostile work environment liability. See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013).

B. NYCHRL

As is the case for discrimination claims, the standard for hostile work environment liability under the NYCHRL is more permissive than that of the NYSHRL. Under the NYCHRL, a plaintiff need not prove that the hostile conduct was severe and pervasive. Instead, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." Mihalik, 715 F.3d at 110. Even under this more lenient standard, however, Veintimilla is entitled to summary judgment. For the reasons discussed in the analysis of Rossbach's NYSHRL hostile work environment claim against Veintimilla, Rossbach has not

demonstrated that any hostile conduct was motivated by her gender.

## III. Retaliation Claims

Defendants have moved for summary judgment on Rossbach's claims that her firing was retaliatory, in violation of Title VII, the NYSHRL, and the NYCHRL. The defendants are entitled to summary judgment on these claims.

### A. Title VII and the NYSHRL

In order to defeat a motion for summary judgment on a Title VII retaliation claim, an employee must first establish a prima facie case of retaliation by showing that "(1) he was engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered a materially adverse action, and (4) there was a causal connection between the protected activity and that adverse action." Agosto, 982 F.3d at 104 (citation omitted). Retaliation claims are analyzed identically under Title VII and the NYSHRL. Kelly, 716 F.3d at 14.

"[A] causal connection between the protected activity and the company's adverse employment action can be established by showing that the employer's action followed the protected activity closely in time." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019). But even when the protected activity is followed closely in time by an adverse employment action, an intervening event between the protected

activity and the adverse employment action may defeat an inference of causation. See Gubitosi v. Kapica, 154 F.3d 30, 33 (2d Cir. 1998) (holding that, in the context of a First Amendment retaliation claim under § 1983, which is analyzed under a similar framework, an intervening event was sufficient to defeat an inference of causation based on temporal proximity). See also Joseph v. Marco Polo Network, Inc., No. 09cv1597 (DLC), 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010); Soto v. Marist Coll., No. 17cv7976 (KMK), 2019 WL 2371713, at *11 (S.D.N.Y. June 5, 2019) (collecting cases in which courts in this district have held that an intervening event defeated an inference of causation).

Rossbach argues that her claims of retaliatory firing survive because of her assertions that she complained to Veintimilla and her union representative about Morales' sexual harassment shortly before her discharge. She reasons that this temporal proximity gives rise to an inference of causation. But this argument disregards the significant intervening event that occurred between these complaints and her firing: her referral for a fitness for duty examination, a physician's performance of that examination, and subsequent positive tests for marijuana and Tramadol, in violation of Montefiore policy. Misconduct by a plaintiff qualifies as an intervening event that defeats an

inference of retaliation. Gubitosi, 154 F.3d at 33. Therefore, Rossbach has not established an inference of causation, and by extension, has not established a prima facie case of retaliation.[4] Defendants are entitled to summary judgment on Rossbach's Title VII and NYSHRL retaliation claims.

B. The NYCHRL

The NYCHRL prohibits "retaliat[ion] or discriminat[ion] . . . against any person because such person has," inter alia, "opposed any practice forbidden under [the NYCHRL]." N.Y.C. Admin. Code § 8-107(7). Retaliation claims under the NYCHRL are analyzed similarly to those under Title VII and the NYSHRL, but the NYCHRL is "slightly more solicitous of retaliation claims." Malena v. Victoria's Secret Direct, LLC, 886 F.Supp.2d 349, 362 (S.D.N.Y. 2012) (citation omitted). Nonetheless, a plaintiff must still show a causal connection between protected activity and the event that was reasonably likely to deter the plaintiff from engaging in protected activity. For the reasons discussed above, Rossbach has not done so. Defendants are therefore

[4] The defendants additionally dispute Rossbach's contention that her oral complaints to Veintimilla and her union representative, and her resistance to Morales' harassment, qualify as protected activities. This Opinion need not reach that issue because Rossbach's failure to establish an inference of causation precludes a showing of a prima facie case of retaliation, regardless of whether Rossbach's activities qualify as protected activities.

entitled to summary judgment on Rossbach's NYCHRL retaliation claim.

## IV. Aiding and Abetting Claims

Rossbach's complaint alleges that the defendants aided and abetted discrimination, retaliation, and a hostile work environment in violation of the NYSHRL and the NYCHRL. The NYSHRL and the NYCHRL prohibit any person from "aid[ing], abet[ting], incit[ing], compel[ling], or coerc[ing] . . . any of the acts forbidden" by the statutes. N.Y. Exec. Law § 296(6); N.Y.C. Admin Code § 8-107(6). "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (citation omitted). A defendant must "actually participate[] in the conduct giving rise to a . . . claim" in order to be held liable under the NYSHRL and the NYCHRL. Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1999).

### A. Discrimination and Retaliation

Defendants are entitled to summary judgment on Rossbach's claim for aiding and abetting her discriminatory and retaliatory firing. A precondition to a valid aiding and abetting claim under the NYSHRL or NYCHRL is a demonstration of a valid primary claim for discrimination or retaliation. For the reasons

discussed above, Rossbach has not demonstrated that her firing was motivated by discrimination or retaliation.

B. Hostile Work Environment

Montefiore is entitled to summary judgment on Rossbach's claim for aiding and abetting liability in connection with her hostile work environment claims under the NYSHRL and NYCHRL. Montefiore's potential aiding and abetting liability in this case is premised on NYSHRL and NYCHRL hostile work environment claims against Montefiore and Morales. Since a defendant cannot aid and abet its own violation of the NYSHRL and NYCHRL, the hostile work environment claim against Montefiore cannot serve as a predicate for the aiding and abetting claim against Montefiore. Similarly, a corporate employer cannot be liable for aiding and abetting a hostile work environment violation by its employee, because such a claim would be derivative of the primary hostile work environment claim against the corporate employer. Malena, 886 F.Supp.2d at 368.

By contrast, neither Morales nor Veintimilla is entitled to summary judgment on Rossbach's aiding and abetting claims insofar as they are premised on her hostile work environment claim against Montefiore.[5] Taking the facts in the light most favorable to Rossbach, if Montefiore is liable for a hostile

[5] Montefiore has not moved for summary judgment on Rossbach's NYSHRL and NYCHRL hostile work environment claims.

work environment under the NYSHRL and the NYCHRL, Morales necessarily "actually participated" in that violation because Rossbach's claim against Montefiore is premised on Morales' conduct.

Rossbach's claim against Veintimilla is premised on her allegation that Veintimilla, while acting as her supervisor, witnessed Morales' sexual harassment and failed to intervene. The Second Circuit has held that NYSHRL aiding and abetting liability may accrue when a supervisor is aware of conduct that could give rise to a primary claim under the NYSHRL, but "t[akes] no action to remedy such behavior." Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004); see also Pellegrini v. Sovereign Hotels, Inc., 740 F.Supp.2d 344, 356 (N.D.N.Y. 2010) (collecting cases in which district courts have held, based on Feingold, that a supervisor's failure to remedy a known hostile work environment gave rise to aiding and abetting liability under the NYSHRL). While Veintimilla claims that she never witnessed Morales' alleged misbehavior, this factual dispute must be resolved at trial.

## V. Claim for Interference with Protected Rights

Montefiore and Veintimilla seek summary judgment on Rossbach's claim for interference with protected rights under

the NYCHRL.[6] The NYCHRL prohibits "any person" from "coerc[ing], intimidat[ing], threaten[ing] or interfer[ing] with . . . any person in the exercise or enjoyment of . . . any right granted or protected" under the NYCHRL, or attempting to do so. N.Y.C. Admin. Code § 8-107(19). To survive a motion for summary judgment, then, a plaintiff must show that a defendant took some affirmative step to coerce, intimidate, threaten or interfere when the plaintiff exercised a protected right.

Rossbach's submission in opposition to defendants' motion for summary judgment does not describe any actions by Montefiore that coerced, intimidated, threatened, or interfered with Rossbach's exercise of a protected right. Rossbach argues that Veintimilla attempted to coerce, intimidate, and threaten her in order to prevent her from making complaints about Morales' conduct. But Rossbach cites only the incidents in which Veintimilla ignored Morales' harassment and the episode where Veintimilla told Rossbach about her affair with Morales as the required coercive, intimidating, or threatening actions. Rossbach does not describe how these incidents -- one of which involved an omission on the part of Veintimilla, rather than an

[6] While Morales claims to be seeking summary judgment on Rossbach's interference claim, defendants' submission makes no argument as to why Morales' motion for summary judgment on this claim should be granted. Morales' motion for summary judgment on this claim is therefore abandoned.

affirmatively coercive, intimidating, or threatening action -- were coercive, intimidating, or threatening, much less allege a nexus between these episodes and her exercise of rights under the NYCHRL. Montefiore and Veintimilla are therefore entitled to summary judgment on this claim.

VI. Claim for Employer Liability under the NYCHRL

Rossbach's complaint alleges that the defendants are vicariously liable for discrimination, retaliation, and a hostile work environment under the NYCHRL's employer liability provision.[7] Morales and Veintimilla have moved for summary judgment on this claim, and Montefiore has moved for summary judgment with respect to the claim for employer liability for

[7] The employer liability provision in the NYCHRL, N.Y.C. Admin Code § 8-107(13), creates broader employer liability than Title VII or the NYSHRL. The NYCHRL creates employer liability in cases:

> (1) where the offending employee exercised managerial or supervisory responsibility . . .;
> (2) [or] where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; and
> (3) [or] where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it.

Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010) (citation omitted).

discrimination and retaliation stemming from Rossbach's discharge.[8]

The NYCHRL's employer liability provision is not a substantive cause of action that creates a distinct form of liability for employers, but instead describes the circumstances in which "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or an agent which is in violation of" the NYCHRL's substantive employment provisions. N.Y.C. Admin. Code § 8-107(13)(b). Rossbach's primary claims under the NYCHRL for discrimination, retaliation, and a hostile work environment are discussed above. But since Rossbach's complaint alleges a distinct cause of action for employer liability under the NYCHRL and the parties' submissions treat the employer liability claim as distinct from Rossbach's other claims, the NYCHRL employer liability claim is discussed separately here.

The defendants are entitled to summary judgment. Morales and Veintimilla were Rossbach's colleagues and supervisors, not her employer. Therefore, Morales and Veintimilla are entitled to summary judgment on Rossbach's employer liability claim in its entirety. Similarly, the employer liability provision

[8] Montefiore has not moved for summary judgment on Rossbach's NYCHRL claim of employer liability for a hostile work environment.

exclusively allows for employer liability when an employee discriminates or retaliates, in violation of the NYCHRL's substantive provisions. As discussed above, the defendants are entitled to summary judgment on Rossbach's claims of discrimination and retaliation stemming from her discharge. There can be no employer liability for discrimination or retaliation that the plaintiff has not shown occurred. Montefiore is thus entitled to summary judgment on Rossbach's employer liability claim to the extent that the claim is dependent on her allegations of discrimination or retaliation stemming from her firing.

## VII. Intentional Infliction of Emotional Distress Claim against Montefiore and Veintimilla

Rossbach has brought claims for intentional infliction of emotional distress under New York law against all defendants. Montefiore and Veintimilla have moved for summary judgment on this claim. For the following reasons, summary judgment is granted.

Under New York law, an intentional infliction of emotional distress claim requires a plaintiff to show "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Rich v. Fox News Network, LLC</u>,

939 F.3d 112, 122 (2d Cir. 2019) (citation omitted). The "extreme and outrageous conduct" element may be satisfied by either a single sufficiently extreme and outrageous act, or by a series of acts that in isolation are not sufficiently extreme and outrageous but "taken together . . . amount to a deliberate and malicious campaign of harassment." Id. Intentional infliction of emotional distress is a "highly disfavored tort under New York law . . . to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citation omitted).

Rossbach's sole argument for Montefiore's liability on this claim is that Montefiore is "vicariously liable for the intentional infliction of emotional distress" inflicted on Rossbach by Morales and Veintimilla. Under New York law, employers are not vicariously liable for torts, such as intentional infliction of emotional distress, "committed by the employee for personal motives unrelated to the furtherance of the employer's business." Swarna v. Al-Awadi, 622 F.3d 123, 144 (2d Cir. 2010) (citation omitted). Applying this principle, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." Id. at 144-45 (citation omitted).

These principles foreclose Rossbach's intentional infliction of emotional distress claim against Montefiore.

Veintimilla is also entitled to summary judgment on Rossbach's intentional infliction of emotional distress claim. Rossbach's claim against Veintimilla stems in part from Veintimilla's alleged participation in Morales' sexual harassment. According to Rossbach, Veintimilla witnessed and ignored Morales' sexual harassment and once told Rossbach that she was jealous of her. These alleged actions and inactions do not constitute the "extreme and outrageous conduct" required for liability, and the two incidents cited by Rossbach, separated by weeks, do not amount to a "deliberate and malicious campaign of harassment."

Rossbach also argues that Veintimilla is liable for intentional infliction of emotional distress for, essentially, engaging in a ploy to secure Rossbach's firing by drugging her with a marijuana brownie and then sending her for a drug test that Veintimilla knew she would fail. Even though it will be assumed that this alleged conduct qualifies as extreme and outrageous, Veintimilla is still entitled to summary judgment. Rossbach has offered little evidence that she experienced emotional distress from this episode. While it can also be assumed that she suffered emotional distress from the

termination of her employment, she has not offered sufficient evidence that her firing and any related emotional distress was caused by her consumption of the marijuana brownie. After all, the drug tests found four drugs in her system, two of which were not prescribed to her.[9]

## VIII. Claim for Conduct Constituting Crimes Under N.Y. Penal Law § 130

Morales has moved for judgment on Rossbach's claim under N.Y. C.P.L.R. § 213-c. That provision of New York law creates a civil cause of action under which victims of certain sexual crimes enumerated in N.Y. Penal Law § 130 et seq. may sue their attackers.

Morales is entitled to summary judgment on this claim. As an initial matter, Rossbach failed to address this claim in her submission in opposition to Morales' motion for summary judgment. The claim is therefore abandoned, and Morales is entitled to summary judgment on that basis. But even if Rossbach had not abandoned this claim, Morales would still be entitled to summary judgment. N.Y. C.P.L.R. § 213-c creates a cause of action for only certain enumerated criminal offenses.

---

[9] Rossbach did not advise Dr. Hacker that she had ingested Tramadol and marijuana. But according to Rossbach, Veintimilla had revealed to her that the brownie contained marijuana before Dr. Hacker examined Rossbach.

Rossbach has not alleged the existence of facts that support each of the elements of any of the enumerated offenses.

## IX. New York City Victims of Gender-Motivated Violence Protection Law Claim as to Morales

The final claim addressed in these motions is the claim Morales violated the New York City Victims of Gender-Motivated Violence Protection Law ("GMVPL") by groping Rossbach and subjecting her to other unwanted physical contact. The GMVPL creates a civil cause of action under which "any person claiming to be injured by an individual who commits a crime of violence motivated by gender" may seek relief. N.Y.C. Admin. Code § 10-1104. The statute defines "crime of violence motivated by gender" as an act "that would constitute a misdemeanor or felony against the person . . . [and] presents a serious risk of physical injury to another" that was "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." N.Y.C. Admin. Code § 10-1103. As such, in order to establish a GMVPL claim, a plaintiff must show that "(1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender." Hughes v. Twenty-First Century Fox, Inc., 304 F.Supp.3d 429, 455 (S.D.N.Y. 2018). Generally,

the animus element requires the plaintiff to present "extrinsic evidence of the defendant's expressed hatred toward women as a group" or allege specific "actions and statements by the perpetrator during the commission of the alleged crime of violence." Breest v. Haggis, 180 A.D.3d 83, 92-93 (N.Y. 1st Dep't 2019).

Morales is entitled to summary judgment on this claim. First, Rossbach has not produced evidence that Morales' unwanted touching posed a serious risk of physical injury. Further, Rossbach has failed to provide evidence -- either extrinsic evidence of Morales' expressed hatred towards women, or specific statements made during the episodes of unwanted physical contact -- indicating that Morales' conduct was motivated by gender-based animus.

Perhaps acknowledging her failure to prove gender-based animus, Rossbach points in her submission to Breest, in which a court held that gender-based animus could be inferred from rape. Id. at 94. But Rossbach does not allege that she was raped by Morales, and she points to no authority indicating that the requisite animus element may be inferred in GMVPL cases not premised on rape. Since Rossbach has not put forth evidence of animus or evidence that Morales' conduct created a serious risk of physical injury, no reasonable jury could conclude that

Morales violated the GMVPL, and summary judgment is granted to Morales on this claim.

## Conclusion

The defendants' November 20, 2020 motion for partial summary judgment is granted, except to the extent that defendants Morales and Veintimilla seek summary judgment on Rossbach's claim for aiding and abetting a hostile work environment under the NYSHRL and the NYCHRL. The following claims remain for trial:

1. Rossbach's Title VII hostile work environment claim against Montefiore (Count 1);
2. Rossbach's NYSHRL and NYCHRL hostile work environment claims against Montefiore and Morales (Counts 3 and 6);
3. Rossbach's NYSHRL and NYCHRL aiding and abetting a hostile work environment claims against Morales and Veintimilla (Counts 5 and 8);
4. Rossbach's NYCHRL interference claim against Morales (Count 9);
5. Rossbach's assault and battery claim against Morales (Count 11); and

6. Rossbach’s intentional infliction of emotional distress claim against Morales (Count 12).

Dated: New York, New York
March 11, 2021

DENISE COTE
United States District Judge