UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREA ROSSBACH,<br><br>                Plaintiff,<br><br>        -against-<br><br>MONTEFIORE MEDICAL CENTER, NORMAN MORALES, and PATRICIA VEINTEMILLA,<br><br>                Defendants. | Civil Case No. 1:19-CV-05758 (DLC) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL AND OTHER SANCTIONS

**LITTLER MENDELSON, P.C.**
Jean L. Schmidt
Nina Massen
900 Third Avenue
New York, NY 10022.3298
(212) 583-9600

*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 1

    Procedural Background........................................................................................ 1

    Facts Relevant To Plaintiffs' Fraud .................................................................. 3

ARGUMENT ............................................................................................................ 3

    I.       PLAINTIFF COMMITTED A FRAUD AGAINST DEFENDANTS AND THE COURT ............................................................................................. 3

            A.      Plaintiff Deliberately Fabricated Evidence Central To Her Claim............ 4

            B.      Plaintiff Took Purposeful Steps to Conceal The Fabrication ................... 5

                  1.      Spoliation ..................................................................................... 6

                  2.      Plaintiff's Perjury........................................................................... 8

    II.      THE COURT HAS THE AUTHORITY TO DIMISS PLAINTIFF'S CLAIMS AND FURTHER SANCTION PLAINTIFF AND HER ATTORNEY FOR FRAUD AND LITIGATION MISCONDUCT..................... 9

              A.      Sanctions Pursuant to the Court's Inherent Powers....................... 9

              B.      Sanctions Pursuant to Fed. R. Civ. P. 37(e)................................ 11

              C.      Sanctions Pursuant to Fed. R. Civ. P. 11 .................................... 12

              D.      Sanctions Pursuant to 28 U.S.C. § 1927 ...................................... 13

    III.     SANCTIONS ................................................................................................. 14

              A.      Plaintiff's Remaining Claims Should be Dismissed.................... 14

              B.      Plaintiff's Counsel Should Be Sanctioned.................................. 16

              C.      Derek Smith Law Group, PLLC Should Be Sanctioned.............. 19

              D.      Fees and Costs............................................................................. 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*In re Air Disaster at Lockerbie Scotland*,
  37 F.3d 804 (2d Cir. 1994)........................................................................................17

*AJ Energy, LLC v. Woori Bank*,
  18-CV-3735 (JMF), (S.D.N.Y. Sep. 25, 2019)........................................................17

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
  185 F.Supp.3d 401 (S.D.N.Y. 2016)........................................................................16

*Aoude v. Mobil Oil Corp.*,
  892 F.2d 1115 (1st Cir. 1989)....................................................................................5

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...................................................................................................10

*Chambers v. NASCO, In*c.,
  501 U.S. 42 (1991).....................................................................................................8

*Chin v. Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012).................................................................................6, 19

*DAG Jewish Directories, Inc. v. Y & R Media, LLC*,
  No. 09 Civ. 7802, 2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010) ...........................15

*Dongguk Univ. v. Yale Univ.*,
  734 F.3d 113 (2d Cir. 2013)......................................................................................10

*Eastway Constr. Corp. v. City of N.Y.*,
  762 F.2d 243 (2d Cir. 1985)......................................................................................12

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir.2000).......................................................................................13

*Enmon v. Prospect Capital Corp.*,
  675 F.3d 138 (2d Cir. 2012)......................................................................................13

*Esposito v. Suffolk Cnty. Cmty. Coll.*,
  390 F. Supp. 3d 428 (E.D.N.Y. 2019) ................................................................10, 16

*Galin v. Hamada*,
  283 F. Supp. 3d 189 (S.D.N.Y. 2017).......................................................................17

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

*Hargrove v. Riley*,
    2007 WL 389003 (E.D.N.Y. Jan. 31, 2007) (Trager, J.) .........................................................14

*Iannazzo v. Day Pitney LLP*,
    No. 04 Civ. 7413(DC), 2007 WL 2020052 (S.D.N.Y. July 10, 2007) ...................................16

*Ilkowitz v. Durand*,
    2018 WL 1595987 (S.D.N.Y. Mar. 27, 2018) .........................................................................19

*Jeffreys v. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003)......................................................................................12

*Jung v. Neschis*,
    No. 01-cv6993, 2009 WL 762835 (S.D.N.Y. Mar. 23, 2009) ...................................................4

*Kamen v. Am. Tel. & Tel.*,
    791 F.2d 1006 (2d Cir.1986)...................................................................................................12

*Lawrence v. The City of New York*,
    No. 15-cv-8947, 2018 WL 3611963 (S.D.N.Y. July 27, 2018)...........................................3, 16

*McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*,
    191 F. Supp. 2d 440 (S.D.N.Y. 2002).......................................................................10, 14, 20

*Milltex Indus. Corp. v. Jacquard Lace Co.*,
    55 F.3d 34 (2d Cir.1995)..........................................................................................................13

*Moazed v. First Union Mortg. Corp.*,
    221 F.R.D. 28 (D. Conn. 2004).................................................................................................18

*Moody v. CSX Transp., Inc.*,
    271 F. Supp. 3d 410 (W.D.N.Y. 2017).................................................................................11, 14

*N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*,
    432 F. App'x 25 (2d Cir. 2011).................................................................................................4

*Nunez v. Bistro N.Y. Dev. Inc.*,
    13 Civ. 0426 (DLC), 2013 U.S. Dist. LEXIS 143408 (S.D.N.Y. Oct. 3, 2013).....................19

*Olaf Sööt Design, LLC v. Daktronics, Inc.*,
    325 F. Supp. 3d 456 (S.D.N.Y. 2018)......................................................................................19

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir.1986)....................................................................................................13

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
  271 F.R.D. 429 (S.D.N.Y. 2010) ..................................................................6

*Ottoson v. SMBC Leasing & Fin., Inc.*,
  268 F. Supp. 3d 570 (S.D.N.Y. 2017)..........................................................11

*In re Pennie & Edmonds, LLP*,
  323 F.3d 86 (2d Cir. 2003)...........................................................................12

*Ptak Bros. Jewelry, Inc. v. Ptak*,
  No. 06-cv-13732 (DC), 2009 WL 807725 (S.D.N.Y. Mar. 30, 2009) (Chin, J.)....................19

*Radecki v. GlaxoSmithKline*,
  646 F. Supp. 2d 310 (D.Conn. 2009) .............................................................8

*Reichmann v. Neumann*,
  553 F. Supp. 2d 307 (S.D.N.Y. 2008)...........................................................13

*Reifler v. N.C. Mut. Life Ins. Co.*,
  No. 18-CV-4711 (KMK), 2019 U.S. Dist. LEXIS 15719 (S.D.N.Y. Jan. 31,
  2019) ............................................................................................................11

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir.2000)...............................................................................9

*Schlaifer Nance & Co. v. Estate of Warhol*,
  194 F.3d 323 (2d Cir.1999)...........................................................................13

*Scholastic, Inc. v. Stouffer*,
  221 F. Supp. 2d 425 (S.D.N.Y. 2002).............................................................5

*Sec. & Exch. Comm'n v. Smith*,
  798 F. Supp. 2d 412 (N.D.N.Y. 2011) ..........................................................13

*Shangold v. Walt Disney Co.*,
  No. 03-cv-9522(WHP), 2006 WL 71672 (S.D.N.Y. Jan. 12, 2006), *aff'd,* 275
  F. App'x 72 (2d Cir. 2008) ..........................................................3, 4, 10, 16

*Shatkin v. McDonnell Douglas Corp.*,
  727 F.2d 202 (2d Cir.1984)...........................................................................18

*Skywark v. Isaacson*,
  1999 WL 1489038 ...................................................................................10, 14

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

*U.S. v. Dunnigan*,
   507 U.S. 87 (1993) .......................................................................................... 8

*Ungar v. City of N.Y.*,
   329 F.R.D. 8 (E.D.N.Y. 2018) ...................................................................... 11

*Unite Here v. Cintas Corp.*,
   500 F. Supp. 2d 332 (S.D.N.Y. 2007) (Cote, J.) ........................................ 9

*Veliz v. Crown Lift Trucks*,
   714 F. Supp. 49 (E.D.N.Y. 1989) ......................................................... 19, 20

*W.K. Webster & Co. v. Am. President Lines, Ltd.*,
   32 F.3d 665 (2d Cir.1994) ............................................................................ 12

*Waran v. Christie's Inc.*,
   315 F. Supp. 3d 713 (S.D.N.Y. 2018) ........................................................ 10

*West v. Goodyear Tire & Rubber Co.*,
   167 F.3d 776 (2d Cir. 1999) ................................................................... 6, 20

*Wilder v. GL Bus Lines*,
   258 F.3d 126 (2d Cir. 2001) ........................................................................ 19

*Yukos Capital S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020) ........................................................................ 10

**Statutes**

28 U.S.C. § 1927 .............................................................................................. 1, 13

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ......... 1, 2

New York City Human Rights Law, N.Y.C ...................................................... 1

State Human Rights Law, N.Y ........................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 11 ......................................................................................... 12, 17

Fed. R. Civ. P. 11(c) .................................................................................... 12, 13

Fed. R. Civ. P. 11(c)(1) ................................................................................... 20

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

Fed. R. Civ. P. 11(c)(4) ............................................................................................13

Fed. R. Civ. P. 37(e) ...............................................................................................11

Fed. R. Civ. P. 37(e)(2) ...........................................................................................11

Rule 8(B) ...................................................................................................................18

Rule 11(b) .................................................................................................................13

Rules 37 and 11 of the Federal Rules of Civil Procedure ..........................................1

## PRELIMINARY STATEMENT

Pursuant to the Court's Order (Docket No. 80), Rules 37 and 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and this Court's inherent authority, Defendants Montefiore Medical Center, Norman Morales and Patricia Veintimilla (together, "Defendants") submit this motion for sanctions against Plaintiff Andrea Rossbach, her counsel, Daniel Altaras, and his firm, Derek Smith Law Group PLLC, for willfully engaging in a pattern of fraudulent conduct to the detriment of Defendants and the Court. This motion seeks an order 1) dismissing Plaintiff's claims in their entirety with prejudice and 2) assessing attorneys' fees and costs against Plaintiff, attorney Altaras, and the Derek Smith Law Group, together with such other and further relief as is just, proper, and equitable. Defendants' motion should be granted because Plaintiff fabricated evidence that was material to her sexual harassment claim, and, with assistance from her counsel, thereafter engaged in a pattern of fraudulent conduct to prevent Defendants from uncovering and challenging the fabricated evidence. They maintained the false narrative even after Defendants provided them with clear and convincing evidence revealing the fraud.

## STATEMENT OF FACTS

**Procedural Background**

Plaintiff filed this action against Defendants on June 19, 2019 asserting causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, N.Y. Exec. § 290, *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Coe § 8-101 *et seq*. ("NYCHRL"). Plaintiff principally alleged that she was sexually harassed by Defendant Norman Morales ("Morales"), her supervisor, and fired after she objected to his misbehavior. On March 11, 2021, this Court granted Defendants' motion for partial summary judgment in part, such that the only claims remaining to be tried were those

related to her allegation that she was sexually harassed by Morales. (Opinion and Order dated March 11, 2021, Docket No. 62.)[1]

On March 15, 2021 Defendants submitted a pre-motion letter requesting permission to move for an order dismissing the remaining claims in this action with prejudice and assessing fees and costs against Plaintiff and her counsel for spoliation of evidence, perpetration of a fraud on the Court, and perjury. (Docket No. 65.) The motion centered on a document produced by Plaintiff (P 000104) containing three sexually suggestive text messages Plaintiff claimed were sent to her by Morales. The text messages were the only documentary evidence of Morales's alleged sexual harassment of Plaintiff.  Defendants' motion was based on Defendants' expert's report that established that the document containing the text messages was a fabrication, and evidence that Plaintiff had spoliated evidence and committed perjury at her deposition.

On March 22, 2021, the Court directed Plaintiff to advise whether she intended to submit an expert report and if so that both parties were to submit their expert reports by April 16, 2021. (Docket No. 66.)  Plaintiff advised the Court that she intended to submit an expert report. (Docket No. 69.)  After the parties submitted their expert reports, the Court ordered an evidentiary hearing to be held on April 22, 2021, and directed that Plaintiff, Plaintiff's expert and Defendants' expert testify at the hearing. (Docket No. 78.) Pursuant to the Court's Order, Plaintiff, Plaintiff's expert and Defendants' expert testified at the hearing on April 22, 2021. At the conclusion of the hearing, the Court set forth her findings of fact and based on those findings, granted Defendants' request to move to dismiss and for sanctions. (Docket No. 80.)

---

[1] The claims remaining to be tried are: Title VII hostile work environment claim against Montefiore (Count I); NYSHRL, NYCHRL hostile work environment claims against Montefiore and Morales (Counts 3 and 6); NYSHRL and NYCHRL aiding and abetting a hostile work environment claims against Morales and Veintimilla (Counts 5 and 8); NYCHRL interference claim against Morales (Count 9); and assault and battery and intentional infliction of emotional distress claims against Morales (Counts 11 and 12).

**Facts Relevant To Plaintiffs' Fraud**

The facts relevant to this motion are set forth in the Court's findings of fact issued at the conclusion of the April 22, 2021 evidentiary hearing. (Evidentiary Hearing Transcript ("EHT") at 88-97.)[2]  The Court's findings of fact include:

- The analysis of the defense expert is compelling and reliable;

- Based on clear and convincing evidence, the plaintiff's evidence of Morales text messages in not authentic and was intentionally fabricated by plaintiff;

- Plaintiff withheld the passcode which would unlock her phone, so she interfered with the ability to do an examination of her iPhone 5 on which she allegedly received the text messages;

- Plaintiff has not given truthful testimony about how the image of the text messages was produced.

(EHT 92-93.)

## ARGUMENT

### I.   PLAINTIFF COMMITTED A FRAUD AGAINST DEFENDANTS AND THE COURT

Plaintiff's fraud, with the assistance of her counsel, was multi-faceted and persistent.  It unfairly hampered Defendants' ability to defend against Plaintiff's claims and "tamper[ed] with the administration of justice." *Lawrence v. The City of New York*, No. 15-cv-8947, 2018 WL 3611963, at *6 (S.D.N.Y. July 27, 2018) (internal citations omitted).  In a case such as this, where Plaintiff's misconduct includes perjury as well as fabricated and spoliated evidence, such willful conduct requires dismissal "to preserve the integrity of the courts."  *Shangold v. Walt Disney Co.*, No. 03-cv-9522(WHP), 2006 WL 71672, at *1 (S.D.N.Y. Jan. 12, 2006), *aff'd,* 275 F. App'x 72 (2d Cir. 2008).

---

[2] A copy of excerpts of the transcript of the Evidentiary Hearing is attached as Exhibit B to the declaration of Nina Massen, sworn to May 27, 2021.

### A.      Plaintiff Deliberately Fabricated Evidence Central To Her Claim

Courts in this Circuit have consistently held that submission of fabricated evidence constitutes sanctionable fraud on the Court, especially where the document in question is central to the case. *See, e.g., N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharm., Inc.*, 432 F. App'x 25, 25 (2d Cir. 2011) (affirming sanctions for fraud on the Court because "[f]alsifying evidence is sanctionable conduct"); *Jung v. Neschis*, No. 01-cv6993, 2009 WL 762835, at *15 (S.D.N.Y. Mar. 23, 2009) (same); *Shangold*, 2006 WL 71672, at *3 (same).

The Court found, based on the credible and compelling evidence presented in the Defendants' Expert Report, that Plaintiff intentionally fabricated the text messages (EHT 92:23-25.) It is undisputed that this evidence was central to her case as it was the only documentary evidence Plaintiff had to support her claim of sexual harassment. That Plaintiff understood that it was essential to her case is evidenced by the fabrication itself. Defendants' forensic expert found, based on his analysis, that the document containing the alleged text messages was "a meticulously created, but fatally flawed fake." (Declaration of Daniel L. Regard III, ¶ 135) (hereinafter "iDS Report")[3] (Docket No. 76.) This characterization recognizes that Plaintiff painstakingly crafted the text messages to closely approximate the appearance of a real iPhone Message app screen.  iDS observed that "[the] fake [] would have taken considerable effort to create due to the meticulously close similarity to, or incorporation of, real iPhone elements." (iDS Report ¶ 64.) Indeed, it required forensic expertise to distinguish Plaintiff's fake from the real thing.

Plaintiff's attention to detail was not limited to the "look" of the text messages, but also to their content. Plaintiff populated the text messages with language from the Complaint to support her claim that Morales was the author and that he was sexually harassing her.  For example, the

---

[3] As noted above, the Court found the iDS Report's analysis compelling and reliable.

text message of November 23 states "You looked hot today." The adjective "hot" is used in paragraphs 15, 22 and 36 of the Complaint.  She also ensured that the text message "Happy Birthday hotstuff!" was sent on her actual birthday, June 20.  (EHT 10:14-15.)

In short, the studied and deliberate manner in which Plaintiff fabricated the text messages establishes that she "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate" her lawsuit. *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425 (S.D.N.Y. 2002) (*quoting Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). By fabricating sexually suggestive text messages from Morales, Plaintiff created documentary evidence to substantiate her allegations of sexual harassment, which otherwise would have pitted the credibility of her testimony against that of Morales.  The text messages sought to tip the balance in her favor, and, had the fabrication not been discovered, would have left Morales in the impossible position of having to refute a fiction.

### B.    Plaintiff Took Purposeful Steps to Conceal The Fabrication

The fact that Plaintiff intentionally fabricated the alleged text messages from Morales warrants sanctions because of its intentionality and the centrality of the faked evidence to Plaintiff's sexual harassment claim. But the sanctionable conduct did not stop there. Thereafter, Plaintiff, abetted by her counsel, engaged in a sustained and multi-pronged cover up. They purposefully attempted to conceal the fraud by, among other things, failing to preserve evidence and lying about the authenticity of the text messages in multiple forums.  Plaintiff and Mr. Altaras had numerous opportunities to admit to the initial fabrication of evidence and limit its adverse effects, but each time they chose instead to perpetuate or disguise the lie to the detriment of, and considerable cost to, Defendants.

### 1.      Spoliation

Central to the concealment of the faked text messages was precluding Defendant from accessing her iPhone 5, which Plaintiff claimed contained the original text messages, and her iPhone X, which Plaintiff claimed contained the photograph of the text messages. Plaintiff knew that any examination of those devices would expose the fabrication because, in fact, the text messages did not exist. To this end, Plaintiff, with both the passive and active assistance of Mr. Altaras, withheld and failed to preserve evidence. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (defining spoliation).   To establish the elements of a spoliation claim, the movant must establish each of the following elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012).  Each of those elements is satisfied here.

Plaintiff engaged in two distinct acts of spoliation with respect to the iPhone 5 to hide the fact that the text messages were fabricated. First, neither Plaintiff nor Mr. Altaras took reasonable steps to ensure the physical integrity of the iPhone 5. Plaintiff and her lawyer's duty to preserve the iPhone 5 arose at least when Plaintiff first met with Mr. Altaras in or about February 2018. Plaintiff testified that at that time, she told Mr. Altaras about the alleged text messages and that she was not sure she would be able to retrieve them. (Rossbach Tr. 27:14-29:5.) Nonetheless, neither Plaintiff nor Mr. Altaras attempted to print, take a screen shot or upload the alleged text messages to an electronic storage platform to preserve the evidence. At the very least, Mr. Altaras should have informed Plaintiff of her duty to preserve during their initial consultation, if not take possession of the iPhone 5.  S*ee Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429,

437 (S.D.N.Y. 2010) (a represented party's preservation obligation "runs first to counsel, who has a duty to advise [their] client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.")

Second, notwithstanding the physical damage to the iPhone 5, the iDS Report stated that "Ms. Rossbach's iPhone 5 is functional, and any data is expected to be intact, and would be accessible if Ms. Rossbach produced the correct passcode."  (iDS Report ¶¶ 8(g), 15 fn. 4) (*citing* Declaration of Cindy McPherson, Consilio, sworn to April 16, 2021 ("McPherson Declaration"), ¶¶ 16, 21 (Exhibit E)). At the Evidentiary Hearing, the Court found that Plaintiff intentionally withheld the correct passcode. (EHT 93:3-9.) As Plaintiff undoubtedly knew, without the passcode, Defendants' experts could not access the iPhone 5's metadata to determine the authenticity of the text messages.  Thus, as the Court found, Plaintiff interfered with Defendants' ability to examine the phone.

The other critical piece of evidence was Plaintiff's iPhone X, because Plaintiff allegedly used it to: (i) photograph the text messages on the iPhone 5; and (ii) to forward the photograph to her lawyer. (Rossbach Tr. 34:1-8.) Thus, Plaintiff and Mr. Altaras also had a duty to preserve it. Nonetheless, Plaintiff traded in her iPhone X in August 2020, without first preserving any of the data on the phone, including the alleged photograph. (Rossbach Tr. 146:14-147:22.) The disposal of the iPhone X compromised the ability of Defendants' forensic experts to determine whether, when or how the photograph of the text messages was taken. (EHT 90:7-10.)

In short, the two most direct ways for Defendants to determine whether the text messages were fabricated would have been to examine the metadata of her iPhone 5 or her iPhone X. It is undisputed that Plaintiff and Mr. Altaras had control of those devices and that they had a duty to preserve them. It also is undisputed that instead of preserving the phones, Plaintiff deliberately

prevented Defendants from gaining access to either of them in an attempt to conceal her fabrication of the text messages, first by withholding the correct passcode for the iPhone 5 and then by failing to preserve the data on her iPhone X before turning it in. Plaintiff's counsel facilitated that concealment by failing to take reasonable steps to ensure that the iPhones and/or the data on the iPhones was preserved.

### 2. Plaintiff's Perjury

Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *See Radecki v. GlaxoSmithKline*, 646 F. Supp. 2d 310, 315 (D.Conn. 2009) (*quoting U.S. v. Dunnigan*, 507 U.S. 87, 94 (1993)). It is inherent in the power of the court to punish contempt, including perjury. *See Chambers v. NASCO, In*c., 501 U.S. 42, 44 (1991).

Here, the evidence establishes that from the beginning of this case, Plaintiff created a false narrative about the text messages to support her claim of sex harassment, and as it began to unravel, she tried to salvage her story through even more lies. Plaintiff has steadfastly maintained that Morales authored and sent to her the three text messages shown on the document she produced to Defendants, and that the document she produced was a photograph of those text messages. The Court's finding that the document is not a photograph and that Plaintiff intentionally fabricated the text messages renders those statements false. (EHT 92:23-25; 94:2-10.) Indeed, the Court found that Plaintiff had given testimony that was not truthful and not credible. (EHT 93:10-11; 95:18-19.)

The Court also found that Plaintiff's version of events shifted over time, including at the Hearing. In its statement of the chronology of the facts related to the text messages at the Hearing, the Court noted some of Plaintiff's contradictory statements including, for example: when the cracks on the screen of the iPhone 5 first appeared (EHT 88:22-24); the occurrence of the ink bleed

obscuring the text messages (89:3-6); when the flickering started and how she was able to stop it long enough to take a photo of the text messages (EHT 89:21-90:1). The inconsistencies among Plaintiff's various sworn statements were clearly not the result of confusion, mistake or a faulty memory. Rather, Plaintiff deliberately and repeatedly lied about how the "photograph" with the text messages was created to conceal the fabrication of the text messages. As the Court found, "over and over again" Plaintiff's testimony was inconsistent with the physical evidence, and her testimony about how the image of the text messages was produced was not truthful. (EHT: 93:10-11; 95:20-21.)

The Court also highlighted that when Defendants' expert pointed out that there were no cracks on the screen in the "photograph" of alleged text messages, which was inconsistent with her deposition testimony that the iPhone 5 screen was cracked in 2017, Plaintiff then submitted a fraudulent Declaration claiming that the screen was not cracked until sometime in 2020, after she took the photograph of the text messages. (EHT 91:9-19.)

In sum, Plaintiff showed no regard for the truth at her deposition, in her Declaration or during the Evidentiary Hearing. She repeatedly lied about receiving the text messages from Morales, lied to support the fabricated evidence and then lied to conceal the fabrication, all in furtherance of her deception of Defendants and the Court. Such conduct constitutes a fraud on the Court and warrants dismissal.

## II.   THE COURT HAS THE AUTHORITY TO DIMISS PLAINTIFF'S CLAIMS AND FURTHER SANCTION PLAINTIFF AND HER ATTORNEY FOR FRAUD AND LITIGATION MISCONDUCT

### A.   Sanctions Pursuant to the Court's Inherent Powers

A court may sanction "a party or attorney [who] has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332 (S.D.N.Y. 2007) (Cote, J.) (*quoting Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir.2000)). Such

conduct includes fraud on the court and other abuses of the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46, 50 (1991). "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).

Courts will terminate actions where, as here, the non-movant has engaged in a "prolonged and repetitive campaign[] of egregious conduct designed to prevent the factfinder from discovering the untruthfulness of their claims." *Esposito v. Suffolk Cnty. Cmty. Coll.*, 390 F. Supp. 3d 428, 431 (E.D.N.Y. 2019) (*citing Shangold*, 275 F. App'x at 73 (plaintiffs based entire case on factual allegation supported by fraudulent evidence, which the plaintiffs reiterated in other evidence and deposition testimony)); *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 454 (S.D.N.Y. 2002) (plaintiff lied repeatedly at her deposition, destroyed potentially critical evidence, lied repeatedly in order to conceal the location of a witness, edited tapes so that they would be more favorable to her case than the unedited originals, engaged in a sham real estate transaction to increase her damages, and made no attempt to correct her deceptive conduct); *Skywark v. Isaacson*, 1999 WL 1489038 at *13-14 (case dismissed due to plaintiff withholding discoverable documents and lying under oath to cover up evidence of malingering, engaging in court-supervised settlement discussions based on misleading record, and refusing to admit wrongdoing when confronted with evidence of deceptions)).

The movant's proof of fraud must be "highly probable" and "leave[ ] no substantial doubt." *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018) (*quoting Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)).  Here, the evidence is clear and convincing that

Plaintiff, with the complicity of her counsel, went to considerable lengths to perpetrate an elaborate fraud on Defendants and the Court.

### B.     Sanctions Pursuant to Fed. R. Civ. P. 37(e)

Rule 37(e) of the Federal Rules of Civil Procedure explicitly permits a court to "dismiss the action or enter a default judgment" based on a party's failure to preserve or take reasonable steps to preserve electronically stored information that "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).   Dismissal is only permitted upon a finding that the "party acted with the intent to deprive another party of the information's use in the litigation." *Id.*

The element of intent can be satisfied by showing the party's failure to take reasonable steps to preserve evidence.  *See e.g., Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the failure to preserve relevant evidence satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e)(2)); *Ungar v. City of N.Y.*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) ("[w]hether the spoliator affirmatively destroys the data, or passively allows it to be lost, is irrelevant; it is the spoliator's state of mind that logically supports the adverse inference").

Dismissal pursuant to Rule 37(e)(2) is appropriate here because Plaintiff's actions went well beyond a failure to preserve; she engaged in active spoliation of crucial ESI evidence. Plaintiff withheld the iPhone passcode and discarded the iPhone X to prevent Defendant from uncovering her fabrication. This targeted and persistent spoliation was "so stunningly derelict as to evince intentionality" and warrants dismissal. *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431-32 (W.D.N.Y. 2017) (sanctions awarded where the defendants actively erased data and disposed of a laptop without ensuring that the data was first properly backed up elsewhere.) *See also Reifler v. N.C. Mut. Life Ins. Co.*, No. 18-CV-4711 (KMK), 2019 U.S. Dist. LEXIS 15719 at *29 (S.D.N.Y. Jan. 31, 2019) (default judgment entered against the plaintiff upon finding his

"willful and proactive [conduct] . . . had lasted over the course of four months and [he] had been explicitly warned of the possibility of sanctions.").

### C.      Sanctions Pursuant to Fed. R. Civ. P. 11

A pleading, motion or other paper violates Rule 11 either when it "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law" *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir.1994) (*quoting Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 254 (2d Cir. 1985)).  If, after notice and a reasonable opportunity to respond, the court determines that the standards set forth in section (b) have been violated, the court may impose sanctions upon the attorneys, law firms, or parties. *See* Fed. R. Civ. P. 11(c). Plaintiff received explicit notice of Defendants' intention to move for sanctions at the meet and confer on February 11, 2021.  Plaintiff also received a copy of the presentation of iDS that indicated with specificity the basis for Defendants' belief that the text messages were fabricated. Plaintiff also received notice of the explicit bases for their motion for sanctions in Defendants' March 15, 2021 letter to the Court asking for permission to move for sanctions.

As this motion is initiated by a party, the "objective reasonableness" standard applies.  *See In re Pennie & Edmonds, LLP*, 323 F.3d 86, 91-92 (2d Cir. 2003). Reasonableness is not determined in hindsight, but on what was objectively reasonable to believe at the time the pleading, motion or other paper was submitted. *See Kamen v. Am. Tel. & Tel.*, 791 F.2d 1006, 1011-12 (2d Cir.1986) (setting forth factors suggesting reasonableness). While a party does not have a continuing obligation to update a pleading that met the requirements of Rule 11 when the pleading was signed, Rule 11 sanctions are appropriate where, as here, an attorney or party continues to litigate the case after acquiring knowledge that the claims are meritless. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 482 (S.D.N.Y. 2003).

If a court determines that Rule 11(b) has been violated, Rule 11(c) authorizes the court to "impose an appropriate sanction" sufficient "to deter repetition of the conduct or comparable conduct by others." Fed. R. Civ. P. 11(c)(4).  Egregious conduct such as filing false documents in bad faith can result in dismissal.  *See, e.g., Sec. & Exch. Comm'n v. Smith*, 798 F. Supp. 2d 412 (N.D.N.Y. 2011) (sanctions imposed for filing a false affidavit).

### D.     Sanctions Pursuant to 28 U.S.C. § 1927

Section 1927 of Title 28 of the United States Code provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  To impose Section 1927 sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir.2000) (*quoting Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir.1999)). Bad faith must be established with "a high degree of specificity." *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir.1995) (*quoting Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986) (quotations omitted)).

The Second Circuit and its district courts have interpreted the statute to permit the imposition of Section 1927 sanctions against law firms.  *See Enmon v. Prospect Capital Corp.,* 675 F.3d 138, 148 n.5 (2d Cir. 2012) (citing supporting cases); *Reichmann v. Neumann*, 553 F. Supp. 2d 307, 327–28 (S.D.N.Y. 2008).

## III.    SANCTIONS

### A.    Plaintiff's Remaining Claims Should be Dismissed.

Dismissal is the appropriate sanction because, as shown above, Plaintiff and her lawyer perpetrated an intentional and sustained fraud on the Court. *McMunn*, 191 F. Supp. 2d at 446.

In determining the appropriate sanction to impose, courts take into consideration the following factors: "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue in the future." *McMunn*, 191 F. Supp. 2d at 461, *citing Skywark*, 1999 WL 1489038, at *15 (collecting cases). Consideration of all of these factors in this case shows that the dismissal of Plaintiff's remaining claims is not only warranted, but the only appropriate sanction.

First, this Court found that Plaintiff intentionally fabricated the text messages, and thereafter engaged in misconduct to conceal the fraud, including spoliation and perjury.  Second, Defendants were prejudiced because Plaintiff and her counsel interfered with Defendants' ability to obtain relevant evidence. Plaintiff's spoliation of evidence alone warrants dismissal. *Moody*, 271 F.Supp.3d at 431-32. In addition, Defendant was forced to spend time and money not only defending the merits of the case, but trying to uncover and then prove Plaintiff fabricated evidence and committed perjury.

Third, far from an isolated, aberrant instance of misconduct, Plaintiff and Mr. Altaras have engaged in a pattern of malfeasance over the course of the litigation that included not only the fabrication itself, but ongoing misconduct in an effort to cover up the fabrication.  *See Hargrove v. Riley*, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (Trager, J.) ("dismissal with prejudice is especially appropriate" where plaintiff "continuously and consciously perpetrated a fraud on the

-14-

court through his submission of fraudulent documents and sworn affirmations of those documents' authenticity.")

Fourth, neither Plaintiff nor her lawyer has ever once sought to correct the lies or remediate the misconduct. Nor have they shown slightest remorse. Instead, they have continued to tell lie after lie in an effort to legitimize the fabrication. For example, instead of seeking to withdraw the fabricated text messages when Defendants provided convincing and compelling evidence of the fabrication, Plaintiff submitted a false declaration, hired an expert witness who did nothing more than offer speculation, moved to seal Plaintiff's expert report as a ploy to extend Plaintiff's filing deadline, lied at the evidentiary hearing, and attempted to offer evidence that had not been produced to Defendants.

Fifth, the case must be dismissed because there is simply no assurance that Plaintiff's misconduct will end if the case is continued. Plaintiff's repeated and blatant lies reflect a complete lack of respect for the truth and for the Court She has lied without the slightest reservation or recognition that her statements are contradictory and not believable. There can be no doubt that if this action to proceed to trial, Plaintiff's misconduct would continue, particularly given that she is the sole witness supporting her claims. Allowing the case to continue would put Defendants in the unfair and impossible position of defending against a party who lies at every turn and a lawyer who, at the very least, imposes no ethical restraint on his client. There is simply no legitimate reason to allow Plaintiff another opportunity to subvert the judicial process.

In sum, Plaintiff has perpetrated a fraud upon the Court and should be punished. Given the totality and damning nature of the facts presented here, "nothing less than outright dismissal would deter similar misconduct or sufficiently punish plaintiffs." *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, No. 09 Civ. 7802, 2010 WL 3219292, at *4 (S.D.N.Y. Aug. 12, 2010). *See also,*

*Esposito*, 390 F.Supp.3d at 431 (E.D.N.Y. 2019) (terminating action where non-movant has engaged in a "prolonged and repetitive campaign[] of egregious conduct designed to prevent the factfinder from discovering the untruthfulness of their claims.") (*citing Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73 (2d Cir. 2008) (plaintiffs based entire case on factual allegation supported by fraudulent evidence, which the plaintiffs reiterated in other evidence and deposition testimony); *Lawrence v. The City of New York*, 15 cv 8947, 2018 WL 3611963 (S.D.N.Y. July 27, 2018) (dismissing case because plaintiff committed perjury and doctored evidence); *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F.Supp.3d 401, 435 (S.D.N.Y. 2016) (Given the plaintiff's "knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to recover, it would be pointless to allow the case to proceed. Dismissal is virtually required under such circumstances.").

### B.      Plaintiff's Counsel Should Be Sanctioned

From the start of this case, Mr. Altaras failed to "exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community." *Iannazzo v. Day Pitney LLP*, No. 04 Civ. 7413(DC), 2007 WL 2020052, at *6 (S.D.N.Y. July 10, 2007) (internal quotations omitted).  He knew as of his first meeting with Plaintiff that she allegedly possessed sexually suggestive text messages from Morales, but she was not confident she could retrieve them.  It is inexplicable why Mr. Altaras did not immediately take steps to preserve the iPhone 5.  Instead, it remained in Plaintiff's possession from 2018 – 2020. During those two years, Mr. Altaras either failed to notice or disregarded incidents raising doubts about the credibility of Plaintiff's claims, which included: P 000371 did not look like a photograph; the photograph displayed no screen cracks or ink bleed; why Plaintiff did not turn over to him P 000371 at the commencement of the case; Plaintiff's deposition testimony about P 000371 was internally

-16-

inconsistent and implausible; and, the passcode she provided did not provide access to the iPhone 5.

Even if Mr. Altaras initially believed his client's allegations and in good faith believed that P 000371 was a photograph of actual text messages that Plaintiff received, there can be no excuse for his conduct once he was presented with evidence from Defendants' counsel on February 11, 2021 that the document was a fabrication and Plaintiff had committed perjury. The seriousness of the situation was made plain:  iDS made a presentation to Mr. Altaras of its preliminary findings; Mr. Altaras received a copy of the iDS presentation; and, he was explicitly told Defendants intended to seek sanctions if the situation was not adequately addressed.

Mr. Altaras's response was not to independently alert the Court to the possible fraud or withdraw as counsel.  Instead, Mr. Altaras went on the offensive, and his continued representation of Plaintiff strayed from "the ambit of 'zealous advocacy' and into the realm of Rule 11 sanctions." *AJ Energy, LLC v. Woori Bank*, 18-CV-3735 (JMF), at *26-27 (S.D.N.Y. Sep. 25, 2019) (*quoting Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017)).

First, Mr. Altaras filed the Rossbach Declaration as an exhibit to his own letter in opposition to Defendants' request to move for sanctions, thereby endorsing its veracity even though its content directly contradicted Plaintiff's deposition testimony.[4]  Next, he filed an forensic report prepared by an expert who did not speak directly to Plaintiff, did not examine the iPhone 5, and did not offer any explanation for the inconsistencies demonstrated in the iDS Report beyond pure speculation. Thus, as Mr. Altaras should have known, Plaintiff's expert's report did not meet the standards for admission of expert testimony as evidence.  *See In re Air Disaster at Lockerbie*

---

[4] It is clear that Plaintiff's Declaration was, as Plaintiff's expert testified, to "correc[t] the timeline" to try to explain away the fact that although Plaintiff testified at her deposition there were cracks in the screen of her iPhone 5 throughout all of 2017, there were no cracks on the screen in the alleged photo. (EHT 39:22-25.)

*Scotland,* 37 F.3d 804, 824 (2d Cir. 1994) (expert testimony should be excluded if it is speculative or conjectural); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir.1984) (expert testimony that is based on assumptions that are "so unrealistic and contradictory as to suggest bad faith" should be excluded).[5]

Mr. Altaras also moved the Court for permission to file Plaintiff's expert report under seal without providing any justification and, indeed, none was apparent.  He used that motion as an excuse to withhold Plaintiff's expert report from Defendants and refused to produce it to Defendants – in flagrant violation of Rule 8(B) of this Court's Individual Practices in Civil Cases -- until ordered to do so by the Court.  This conduct, standing alone, warrants sanctions.  *See e.g., Moazed v. First Union Mortg. Corp.*, 221 F.R.D. 28, 33 (D. Conn. 2004).

Mr. Altaras's disrespect for the Court went even further. In his direct examination of Plaintiff at the Evidentiary Hearing, he had Plaintiff repeat her false testimony that Morales authored each of the text messages (EHT 10:11-11:23) and that the passcode provided to Defendants was correct. (EHT 17:20-25.)  He also attempted to introduce evidence that had been withheld from Defendants. (EHT 12:2-15:13.)

Lastly, Mr. Altaras forced Defendants to prepare this Motion notwithstanding the Court's findings of fact at the conclusion of the Evidentiary Hearing and its generous offer to permit the parties the opportunity to negotiate a resolution without motion practice.  Mr. Altaras never sought a discussion with Defendants' counsel, thereby multiplying these proceedings with attendant fees and costs.

---

[5] As the Court pointed out, Mr. Altaras had the opportunity at the Evidentiary Hearing to have Plaintiff lay the foundational testimony to support her expert's speculations, but he chose not to do so. (EHT 96:9.) This suggests that in fact Plaintiff could not.

Even if Mr. Altaras did not set Plaintiff's fraudulent scheme in motion, he was complicit in its execution and perpetuation by failing to adequately investigate the authenticity of the text messages, preserve the iPhone 5 and iPhone X, and verify the iPhone 5 passcode.  Moreover, Mr. Altaras was given the opportunity to disavow Plaintiff's many misrepresentations after being presented with evidence of the fabrication. Instead, he furthered the subterfuge by filing a false declaration and speculative rebuttal expert report. In sum, Mr. Altaras should be sanctioned for his misconduct. *See, e.g.*, *Ilkowitz v. Durand*, 2018 WL 1595987, at *19 (S.D.N.Y. Mar. 27, 2018) (sanctions are appropriate for filing papers containing false statements or were filed for an improper purpose.);  *Ptak Bros. Jewelry, Inc. v. Ptak*, No. 06-cv-13732 (DC), 2009 WL 807725, at *9 (S.D.N.Y. Mar. 30, 2009) (Chin, J.) (entering default judgment as a sanction for, among other things, attorney misrepresentations to the Court);  *Nunez v. Bistro N.Y. Dev. Inc.*, 13 Civ. 0426 (DLC), 2013 U.S. Dist. LEXIS 143408 at *12 (S.D.N.Y. Oct. 3, 2013) (sanctions may be imposed where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court) (*quoting Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001);  *Veliz v. Crown Lift Trucks,* 714 F. Supp. 49, 60-61 (E.D.N.Y. 1989) (plaintiff's counsel sanctioned for, *inter alia*, "comfortably [choosing] the course of dissembling and [] misdirection" rather than admitting to his misrepresentations to the court concerning the timing of his receipt of pre-trial materials); *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456, 461 (S.D. N.Y. 2018) (sanctions under 28 U.S.C. Section 1927 against an attorney who "multiplies proceedings and engages in vexatious conduct in bad faith." (internal quotation omitted)).

## C.    Derek Smith Law Group, PLLC Should Be Sanctioned

New York State is the only jurisdiction that requires law firms, and their lawyers with management or direct supervisory authority over another lawyer, to make "reasonable efforts to ensure" that "lawyers in the firm conform to the disciplinary rules." *New York Lawyer's Code of*

*Professional Responsibility,* DR 1-104(A), (B).   The Derek Smith Law Group PLLC (the "Firm") failed to exercise such reasonable efforts.  At the latest, Defendants' Letter Motion for Permission to Move for Sanctions (Docket No. 66) put the Firm on notice of potential sanctions.  Reasonable remedial action at that point would have averted the multiplication of proceedings, including submission of the parties' respective expert reports, the evidentiary hearing, motion to sanction Defendants, motion to file under seal, and the instant motion for sanctions. The Firm failed to exercise the requisite oversight and should be held vicariously liable for statutory sanctions or pursuant to the Court's inherent discretion.  *See* Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."); *Veliz*, 714 F.Supp. at 64-65 (the court assessed monetary damages against counsel and his law firm based on counsel's sanctionable conduct).

### D.    Fees and Costs

As further sanction against Plaintiff and Mr. Altaras for their fraud and misconduct, Defendants request the Court to award Defendants their reasonable fees and costs incurred related to the alleged text messages from March 16, 2020, the date Mr. Altaras received the iPhone 5 from Plaintiff, through the final adjudication of this motion, including all costs associated with Defendants' experts, and that this award be against Plaintiff, Mr. Altaras and Derek Smith Law Group PLLC. This sanction is appropriate because by their misconduct, Plaintiff and Mr. Altaras have unreasonably and vexatiously multiplied these proceedings. In addition, awarding Defendants their fees and costs will deter parties from engaging in the same type of misconduct engage in by Plaintiff and Mr. Altaras, and, importantly, restore Defendants to the position they would have been absent Plaintiff and Mr. Altaras' wrongdoing. *See McMunn,* 191 F.Supp. 2d at 461*, citing West v. Goodyear Tired & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).

-20-

Defendants recognize that any award of attorneys' fees and costs would most likely be paid by Mr. Altaras and/or his law firm, rather than Plaintiff. Therefore, Defendants also request that the Court award a monetary sanction against Plaintiff in the amount of $25,000 to be paid to Defendants to ensure that Plaintiff pays for at least part of the costs she caused Defendants to incur.

Dated: May 27, 2021
      New York, New York

                                  LITTLER MENDELSON, P.C.

                              By: */s/  Jean L. Schmidt*
                                   Jean L. Schmidt
                                   Nina Massen
                                   900 Third Avenue
                                   New York, NY  10022
                                   (212) 583-9600

                                   *Attorneys for Defendants*