UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
ANDREA ROSSBACH,                     :
                                     :        19cv5758 (DLC)
                      Plaintiff,     :
                                     :
            -v-                      :        OPINION AND ORDER
                                     :
MONTEFIORE MEDICAL CENTER, NORMAN    :
MORALES, and PATRICIA VEINTIMILLA,   :
                                     :
                      Defendants.    :
                                     :
------------------------------------ X

APPEARANCES:

For plaintiff Andrea Rossbach:
Daniel Altaras
Derek Smith Law Group, PLLC
One Penn Plaza
Suite 4905
New York, NY 10119

For defendants Montefiore Medical Center, Norman Morales, and
Patricia Veintimilla:
Jean L. Schmidt
Nina Massen
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

     The defendants in this employment discrimination case have

moved to dismiss this action, as well as for the imposition of

monetary sanctions against plaintiff Andrea Rossbach, her

counsel Daniel Altaras, and the Derek Smith Law Group ("DSLG"),

her counsel's law firm.  Their motion is based on this Court's

finding, following an evidentiary hearing, that Rossbach had

fabricated documentary evidence she produced during discovery in this action.  For the following reasons, the motion to dismiss is granted, and monetary sanctions are imposed on Rossbach, Altaras, and the DSLG.

## **Background**

The facts set forth in this Opinion are derived from this Court's March 11, 2021 Opinion and Order granting partial summary judgment to the defendants, see Rossbach v. Montefiore Medical Center, No. 19cv5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) (the "2021 Opinion"), the Court's findings of fact at the April 22, 2021 evidentiary hearing in this case, and the parties' submissions made in conjunction with the April 22 evidentiary hearing.  Familiarity with the 2021 Opinion is presumed.

I.  Rossbach's Claims and the Events Leading to the Evidentiary Hearing

Rossbach filed this lawsuit on June 16, 2019.  Her complaint alleges federal, state, and New York City discrimination and tort claims arising from two related sets of events.  Rossbach alleged that she was subjected to a campaign of sexual harassment by defendant Norman Morales, her supervisor.  The complaint also alleges that, after she objected to Morales' sexual harassment, Morales and defendant Patricia

Veintimilla retaliated against her, which culminated in her firing by Montefiore.  The defendants moved on November 20, 2020 for summary judgment on some of Rossbach's claims -- primarily those related to Rossbach's discharge -- and the 2021 Opinion largely granted that motion.  Most of the claims stemming from Morales' alleged sexual harassment remained for trial.

On March 15, 2021, the defendants sought leave to move to dismiss Rossbach's remaining claims with prejudice and for sanctions against Rossbach and her counsel.  As a basis for this relief, the defendants alleged that certain documentary evidence produced during discovery had been fabricated, citing a forensic analysis of that evidence.  The defendants further alleged that Rossbach had spoliated evidence and committed perjury at her deposition in this case.  Later that day, Rossbach was ordered to notify the Court if she intended to engage a forensic expert to analyze the disputed evidence.  On March 19, Rossbach informed the Court that she intended to engage an expert, and the Court ordered the parties to submit their respective expert reports in anticipation of an evidentiary hearing.  Those reports were submitted on April 16.

II.  The Evidentiary Hearing and the Court's Findings of Fact
     Regarding to the Disputed Evidence

On April 22, the Court held an evidentiary hearing
regarding the allegations of fabrication of evidence.[1]  Daniel L.
Regard II and Joseph Caruso testified as forensic experts for
the defendants and Rossbach, respectively, and Rossbach also
testified.  The Court received the expert reports of Regard and
Caruso as their direct testimony, and they were subject to cross
examination regarding that testimony at the hearing.  Rossbach
was subject to both direct and cross examination at the hearing.
At the conclusion of the hearing, the Court found by clear and
convincing evidence that Rossbach had fabricated the disputed
text message evidence and had given false testimony about how
the evidence had been produced.  As a result, the defendants'
request to move to dismiss and for sanctions was granted.  The
Court's findings of fact are outlined below.

A.  The Allegations Against Morales and the Disputed
    Evidence

In her complaint, Rossbach alleged that Morales, who was
one of her supervisors, subjected her to, among other things, a
series of unwanted sexual comments and to unwanted sexual
touching.  Rossbach never made a formal complaint regarding this

---

[1] Due to the ongoing COVID-19 pandemic, the evidentiary hearing
was, with the consent of the parties, conducted via
videoconference.

alleged conduct,[2] however, and there is very little documentary
evidence that supports her claims.   The primary piece of
documentary evidence supporting Rossbach's allegation that she
was sexually harassed by Morales is the following image that
purports to depict a series of text messages sent by Morales to
Rossbach.





This image is a fabrication.

     The image was produced to the defendants twice.   The image
was first produced to the defendants during discovery on May 20,

---

[2] Rossbach claims that she orally complained about Morales'
sexual harassment to Patricia Veintimilla, a supervisor, and to
her union representative, but there is no written documentation
of these complaints.

2020 as a PDF file entitled "P000104.pdf."  After Rossbach's deposition on October 29, 2020, the defendants requested the image in its original format, and Rossbach produced a JPEG file entitled "P000371.jpg."  The two images are in all material respects identical, save for their computer file format.

B.   Chronology of Events Surrounding the Disputed Evidence

Rossbach claimed that she received the text messages displayed in the image from Morales on the iPhone 5 that she used during 2017.  She testified during her deposition that during 2017 her iPhone 5 developed "severe screen cracks." During the last few days of November 2017, soon after the date of the final alleged text message from Morales, her iPhone 5 developed an "ink bleed" effect on its screen and she was unable to view text messages.[3]  During December 2017, Rossbach replaced her iPhone 5 with a new iPhone X.  She stored the iPhone 5 in a drawer in her home.  She claimed she was unable to transfer data from her iPhone 5 to her iPhone X.

---

[3] In a March 19, 2021 declaration (the "March 19 Declaration") and at the evidentiary hearing in this case, Rossbach changed her story.  She claimed that the phone did not, in fact, have an ink bleed effect on its screen until 2020, when she dropped the phone onto a tile floor in her kitchen.  Her Declaration and her testimony at the evidentiary hearing were given after she learned that the defendants had raised questions about the authenticity of the image.

6

On January 5, 2018, Montefiore fired Rossbach, and in May 2018, she filed a complaint regarding Montefiore with the Equal Employment Opportunity Commission ("EEOC").  In March 2019, the EEOC gave Rossbach a right-to-sue letter, and in June 2019, Rossbach filed the instant lawsuit.  A pretrial scheduling order was issued on January 14, 2020.

At Rossbach's October 29, 2020 deposition, she testified about receiving the text messages from Morales.  She also testified about the creation of the image of those messages, claiming that, because the iPhone 5 "screen was extremely damaged," she could not take a screen shot of the Morales text messages on her iPhone 5, but that she took a picture of her iPhone 5 screen with her iPhone X and sent the picture to Altaras.  She confirmed that the passcode for the iPhone 5 is 0620, and that she had given the iPhone 5 to her attorney. After the deposition, counsel for the defendants requested from Altaras the original image provided by Rossbach, and Altaras produced to the defendants the P000317.jpg file.

In the March 19 Declaration, submitted after the defendants notified the plaintiff that they were contesting the authenticity of the text messages, Rossbach changed her explanation of the state of her iPhone 5.  She claimed that in March 2020, she sought to recover the text messages from Morales

7

stored on her moribund iPhone 5, and that she attempted to take a screen shot of the text messages but was unable to do so because the iPhone 5's screen was broken and flickered erratically.  Instead, she placed a finger on the screen of the iPhone 5 to prevent it from flickering and used the camera feature of her iPhone X to take a picture of the screen of her iPhone 5 at a moment when the screen was not flickering.  She then used the iPhone X to send the photograph to her counsel, who produced it to the defendants' counsel in PDF format as P000104.pdf.  The image as produced does not show any signs of a cracked screen, an ink bleed, flickering, or Rossbach's finger.

In the March 19 Declaration, Rossbach also averred that, in September 2020, the iPhone X that she had used to take the picture of her iPhone 5 screen began to malfunction.  She took her iPhone X to a retail store operated by her cell phone service provider, where she was informed that the iPhone X could not be repaired and that she would need to trade it in for a new phone.  She disposed of her iPhone X and did not maintain a copy of the data stored on her iPhone X.  The defendants were not afforded the opportunity to examine the iPhone X or its contents.

The defendants sought the production of Rossbach's iPhone 5 for a forensic evaluation.  Rossbach provided the iPhone 5 to

8

Altaras, and on October 7, a courier retrieved the iPhone 5 from Altaras' home.  The phone was delivered to Consilio, a forensic services provider, along with a handwritten note that read "Passcode: 0620."  Consilio staff observed that the screen of the iPhone 5 was cracked but that there was no apparent "ink bleed" or flickering on the screen.  The forensic evaluation process required Consilio staff to first unlock the iPhone 5 by entering its passcode.  The evaluator attempted to unlock the device by using the "0620" passcode, but the device did not unlock and displayed a message stating that the device would be disabled for ten minutes.  A Consilio evaluator then made a second attempt to unlock the device by entering the "0620" passcode, but the device displayed a message that the "0620" passcode was incorrect and that the device would be permanently disabled if more than 10 failed attempts to unlock it were made. Counsel for the defendants asked Rossbach to provide the correct passcode for the iPhone 5 at her October 29 deposition, and Rossbach testified that the passcode was "0620."  Because Rossbach did not provide the correct passcode to unlock her iPhone, Consilio staff were unable to unlock it and conduct a forensic evaluation.

As noted, Rossbach provided her March 19 Declaration after defense counsel had notified Altaras of their conclusion that

the images of the purported text messages were a fabrication. Defense counsel engaged Regard to assess the authenticity of the images after receiving the P000317.jpg file from Altaras.  On February 11, Altaras and defense counsel met with Regard.  At the meeting, Regard described the basis for his conclusion that the image was a fabrication, including the obvious point that the P000317.jpg image did not show any cracks on the screen of her iPhone 5.  After that meeting, Rossbach provided the March 19 Declaration in which she claimed, contrary to her deposition testimony, that at the time she took a photograph of her iPhone 5 screen, it was not cracked.  She instead asserted that the iPhone 5's screen flickered erratically at the time she took the photograph of the screen.  Rossbach's March 19 Declaration claims that the cracks and the "ink bleed" only developed when she dropped the iPhone 5, which was after she took the photograph of the iPhone 5 with her iPhone X.  Rossbach had not mentioned the purported flickering issue in her deposition testimony.

C.   Findings of Fact Regarding Fabrication and Spoliation

The evidence that Rossbach fabricated the text message evidence is overwhelming.  The Court's findings of fact at the April 22 hearing included the following.

First, the P000317.jpg image produced by the plaintiff is not consistent with Rossbach's testimony regarding its creation. At her deposition, she explicitly stated that in 2017, her iPhone 5 had developed severe screen cracks that rendered it effectively unusable and that it developed an "ink bleed" that left her unable to view text messages. She further testified that as a result, she could not use the screen shot function on the iPhone to document the text messages purportedly sent by Morales, and that she instead had to photograph her iPhone 5 screen with her iPhone X in order to transmit this evidence to her attorney. But no screen cracks or ink bleed are visible in the document she contends is a photograph of the picture she took of her iPhone 5 screen, and those artifacts would have been visible in any authentic photograph of an iPhone 5 damaged in the way she described.

Moreover, her testimony regarding the state of her iPhone 5 changed in material ways over time. She testified in her deposition that the iPhone 5 had screen cracks in 2017. After the defendants called into question the authenticity of the image produced to them, she submitted the March 19 Declaration in which she repudiated her prior claim that the iPhone 5 had screen cracks in 2017. She instead claimed that the iPhone 5 was unusable because of a screen flicker in 2017. Additionally,

she testified at the April 22 hearing that the screen cracks and
"ink bleed" described in her deposition did not develop until
she accidentally dropped the iPhone 5 after delivering the image
to Altaras in 2020.  By themselves, these inconsistent
statements undermined the credibility of her testimony regarding
the image.

Second, while Rossbach claimed that the disputed image was
a photograph of her iPhone 5 screen taken with an iPhone X, it
was not.  The P000317.jpg image file, which was purportedly the
original photograph taken by Rossbach and provided to Altaras,
lacked characteristic metadata attached to photographs taken
with the iPhone X.[4]  The absence of this metadata indicates that
the image is not a photograph taken by an iPhone X.
Additionally, analysis of the image's color characteristics, as
well as a visual assessment of the image, indicates that it is
not a photograph at all.

Third, the image does not depict text messages as they
would appear on an iPhone 5.  The iPhone text message
application that the image purports to depict is a component of
the iPhone operating system ("OS"), which means that the version

---

[4] Metadata is "[i]nformation describing the history, tracking, or
management of an electronic file."  Fed. R. Civ. P. 26(f)
advisory committee's note (2006).

of the iPhone OS used on a given iPhone determines the visual
characteristics of text messages displayed on that iPhone.  The
last version of the iPhone OS supported by the iPhone 5 is
version 10.[5]  For instance, certain characteristics of the font
and icons in the iPhone text message application will be
consistent on all iPhones using OS 10.[6]  But the image produced
by Rossbach and Altaras contains characteristics not consistent
with OS 10 or any other version of the iPhone OS available on
the iPhone 5.  These include the icon depicting the phone's
level of battery charge; the font size and style in the header;
the icons in the lower portion of the header; the design of a
"heart eyes" emoji in the purported message from Morales to

---

[5] As a point of comparison, the most recently released version of
the iPhone is the iPhone 12.  See https://www.apple.com/iphone/.
The most recent version of the iPhone OS is version 14, which
can be utilized only by the iPhone 6s and newer iPhone models.
See https://www.apple.com/ios/ios-14/.

[6] Rossbach's expert Caruso agreed that all iPhones using the same
OS have the same default interface characteristics.  But he
added that an iPhone user may adopt a non-standard interface
configuration for their phone by changing the device's settings
or "jailbreaking" the device to allow for modifications not
approved by Apple.  Caruso, however, did not testify that a
settings change or jailbreaking of an iPhone 5 could produce the
specific interface anomalies that Regard described, did not
examine Rossbach's iPhone 5, and did not interview Rossbach to
ask whether she had jailbroken her phone.  Moreover, Rossbach
did not testify that she had changed her iPhone's interface
settings or that her iPhone was jailbroken.  She also testified
that she lacked technical savvy.

Rossbach;[7] and the icon for the iMessage Apps feature in the footer.

More to the point, the image contained elements that are not consistent with _any_ iPhone OS.  For instance, the contact bar displayed in the image shows Morales' full first and last name, while an authentic iPhone OS image would display only his first name.  The blank text entry box at the bottom of the page is also inconsistent with an image of an authentic iPhone interface, because all versions of the iPhone OS show the words "iMessage" or "Text Message" in an empty text entry box, depending on the protocol that the iPhone will use to send the message.  Finally, the font used in the image differs, albeit subtly, from that used to display text messages on iPhones.

In sum, the evidence at the evidentiary hearing conclusively demonstrated that the image was not of text messages received on an iPhone 5, that it was not a photograph taken by an iPhone X, that the image is not an authentic representation of how text messages received on an iPhone would be displayed, and that the image was not even a photograph.  As

---

[7] The "heart eyes" emoji depicted in the image is the version displayed on iPhones running OS 13 or later.  Because the visual characteristics of a text message displayed on an iPhone depend on the iPhone's OS, this version of the emoji is not displayed on iPhones running OS 10, even if the text message is sent from an iPhone running OS 13 or later to an iPhone running OS 10.  As noted above, the iPhone 5 is not capable of running OS 13.

a result, there is clear and convincing evidence that Rossbach
fabricated the image and engaged in perjury and spoliation to
prevent discovery of that fabrication.

III. Recent Procedural History

At the April 22, 2021 evidentiary hearing, the Court
granted the defendants' request to move to dismiss and for
sanctions.  The Court proposed two scheduling options for the
briefing of those motions: one proposed scheduling option
required prompt briefing of the defendants' motions, while the
other proposed scheduling option was elongated to give counsel
for the parties the opportunity to confer regarding a resolution
of this action.  Upon a representation from Altaras that an
opportunity to confer could be fruitful, the Court adopted an
elongated schedule for the briefing of those motions.  The
parties did not reach an agreement, and on May 27, the
defendants timely filed a motion to dismiss and a motion for
sanctions.

Rossbach opposed those motions on June 3.  With her
opposition, Rossbach included an 18-page expert declaration
dated June 3, 2021 ("Caruso Declaration") and a declaration from
Altaras that attached purported new evidence of Morales'
harassment of Rossbach and one of her female colleagues.  The
motions became fully submitted on June 10.

15

## Discussion

The defendants have moved for sanctions in the form of dismissal of the plaintiff's remaining claims in this action, as well as monetary sanctions against the plaintiff, her counsel, and her counsel's law firm.  They also seek an award of attorneys' fees and costs stemming from their investigation into the fabrication of the text messages and the litigation of their resulting motion for sanctions.

I.  Legal Framework

The defendants have moved for sanctions on several distinct grounds: the Court's inherent power; Title 28, United States Code, Section 1927; and Rule 37(e) of the Federal Rules of Civil Procedure.[8]  This Opinion sets out the legal framework underlying each basis for sanctions before analyzing the defendants' motion.

A.  Inherent Power

"Every district court has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant."  <u>Mitchell v. Lyons Pro. Servs., Inc.</u>, 708 F.3d 463,

---

[8] The defendants have also moved for sanctions under Rule 11, Fed. R. Civ. P.  When a party seeks Rule 11 sanctions, it must serve the motion on the party against whom it seeks sanctions, "but [the motion] must not be filed or presented to the court if the challenged paper . . . is withdrawn" within 21 days.  Fed. R. Civ. P. 11(c)(2).  Since the defendants have not complied with Rule 11's procedural requirements, Rule 11 sanctions may not be imposed in this case.

467 (2d Cir. 2013) (citation omitted).  "Indeed . . . district judges have an obligation to act to protect the public, adversaries, and judicial resources from litigants and lawyers who show themselves to be serial abusers of the judicial system."  Liebowitz v. Bandshell Artist Mgmt., No. 20-2304-CV, 2021 WL 3118938, at *7 (2d Cir. July 23, 2021).  A district court's inherent power to sanction includes the power to "sanction a party . . . to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court."  Yukos Cap. S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020).  Fraud on the court occurs when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action."  Id. (citation omitted).

A district court may use its inherent power to sanction a plaintiff by dismissing her case with prejudice, Shepherd v. Annucci, 921 F.3d 89, 98 (2d Cir. 2019), or by imposing monetary sanctions against a party or her counsel, International Technologies Marketing, Inc. v. Verint Systems, Ltd., 991 F.3d 361, 367 (2d Cir. 2021).  "Because of its potency, however, a court's inherent power must be exercised with restraint and discretion."  Id. at 368 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)).  Before a court may invoke its inherent

power to sanction, the party facing sanctions must be provided with "adequate notice and opportunity to be heard." Shepherd, 921 F.3d at 97.[9]  When the sanction is dismissal with prejudice, it must be supported by "clear evidence of misconduct and a high degree of specificity in the factual findings." Mitchell, 708 F.3d at 467 (citation omitted).  The Court must find "willfulness, bad faith, or reasonably serious fault," id. (citation omitted), and must also consider "whether a lesser sanction would [be] appropriate," Shepherd, 921 F.3d at 98 (citation omitted).

B.   Section 1927

The defendants seek sanctions against plaintiff's counsel pursuant to § 1927, which provides that

> [a]ny attorney . . . admitted to conduct cases in any
> court of the United States . . .  who so multiplies
> the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy
> personally the excess costs, expenses, and attorneys'
> fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  This provision allows a court to impose sanctions against both Altaras and his law firm, DSLG.  Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 n.8 (2d Cir. 2018).

---

[9] Rossbach and her counsel have been afforded adequate notice and opportunity to be heard in this case, and do not contend otherwise.

Section 1927 sanctions may only be imposed "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011) (citation omitted). As is the case for sanctions imposed pursuant to a court's inherent power, a court must provide notice and opportunity to be heard before imposing § 1927 sanctions. Id. at 126. Before imposing monetary sanctions under § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." Huebner, 897 F.3d at 55 (citation omitted). When an attorney continues to defend a complaint even after learning of facts rendering the complaint "fatal[ly] flaw[ed]," he has engaged in bad faith conduct sanctionable under § 1927. Liebowitz, 2021 WL 3118938, at *10.

C.   Rule 37(e)

Finally, the defendants seek dismissal as a sanction pursuant to Rule 37(e), Fed. R. Civ. P.  That rule permits a court to "dismiss the action" if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take

reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery" and the court finds "that the party acted with the intent to deprive another party of the information's use in the litigation."

II.  Analysis

    A.  Dismissal

An application of the aforementioned principles indicates that dismissal of this action is warranted as an exercise of this Court's inherent power to sanction and deter fraud on the Court.[10]  Rossbach willfully and in bad faith fabricated evidence in this action and attempted to mislead the Court regarding her actions.  There is overwhelming evidence that the image purporting to depict text messages was inauthentic and intentionally fabricated.  In sum, Rossbach engaged in an "unconscionable scheme calculated to interfere with the judicial

---

[10] In the alternative, dismissal is also proper under Fed. R. Civ. P. 37(e).  The evidence adduced at the hearing indicated that Rossbach intentionally deprived the defendants of access to the electronically stored information on her iPhone 5 by refusing to provide the correct passcode for the device.  She even provided a false passcode when asked to provide the correct passcode for the device while she was under oath at her deposition.  Rossbach also disposed of her iPhone X while this litigation was pending and did not maintain a copy of its data, even though she knew that it contained potentially relevant electronically stored information.  This knowing and intentional spoliation was intended to deprive the defendants of their ability to investigate Rossbach's claims in preparation for trial.  In its own right, Rossbach's spoliation warrants dismissal.

system's ability impartially to adjudicate the action."
Feldman, 977 F.3d at 235 (citation omitted); see also King v.
First American Investigations, Inc., 287 F.3d 91, 95 (2d Cir.
2002) (defining "fraud on the court" as "fraud which seriously
affects the integrity of the normal process of adjudication" and
"does or attempts to defile the court itself") (citation
omitted).

Given the severity and willfulness of her conduct,
dismissal with prejudice is the only appropriate sanction for
her actions.  Overwhelming evidence indicates that Rossbach
sought to defraud the Court and the defendants through a willful
and persistent campaign of fabrication, spoliation and perjury.
A lesser sanction -- such as a monetary sanction, the exclusion
of evidence, or an appropriate instruction to the jury at trial
-- would be insufficient to remedy the impact of this misconduct
or to deter future misconduct.

Moreover, if this case were to proceed to trial, the result
is highly likely to be the same as if the Court were to dismiss
this action now.  Since there is limited, if any, documentary
evidence of Rossbach's claims of workplace harassment, the
outcome of any trial would turn on a jury's assessment of the
credibility of Rossbach, Morales, and other key witnesses.  But
given that the jury would learn at trial of Rossbach's campaign

of willful fabrication and deception regarding this very claim,
no reasonable juror would credit Rossbach's testimony.  A trial
in this case would therefore be a pointless waste of judicial
resources and impose an expensive and undue burden on the
defendants.

In her submission in opposition to the defendants' motions
to dismiss and for sanctions, Rossbach offers almost no argument
as to why a sanction of dismissal is not warranted.  Instead of
acknowledging either the overwhelming evidence of fabrication or
even her conflicting explanations about the retrieval of the
text messages, she devotes her opposition almost entirely to an
effort to relitigate the expert testimony at the April 22
evidentiary hearing and to describe evidence of other alleged
misconduct by Morales.[11]

Through the Caruso Declaration, Rossbach seeks to introduce
new evidence that purports to demonstrate the authenticity of
the image.  This Declaration is untimely.  The parties were
required to exchange expert reports in advance of the hearing
and those reports constituted the direct testimony of their
experts at the hearing.  The defendants' expert report was

---

[11] Altaras attempted to introduce some of this evidence at the
April 22 hearing.  The Court excluded this evidence because it
was not disclosed to the defendants during discovery or, indeed,
at any point before the April 22 evidentiary hearing.

submitted on April 16, and Rossbach submitted her expert
declaration on April 19.  If Rossbach wished to introduce a
supplemental expert report in support of her contention that the
disputed image is an authentic representation of text messages
sent to her by Morales, she should have done so in advance of
the April 22 hearing or requested an adjournment of the hearing
to prepare and produce the supplemental report.  She did
neither.  At the hearing, Altaras had an opportunity to cross-
examine Regard and confront his evidence of fabrication.
Rossbach's belated attempt to relitigate the April 22
evidentiary hearing is improper.

Moreover, this purported new evidence in the Caruso
Declaration is unpersuasive on its own terms.  At the April 22
evidentiary hearing, Caruso proffered largely similar testimony
as to steps Rossbach could have taken to configure her iPhones
in a manner that produced the visual anomalies identified by
Regard.  The Court rejected that testimony as speculative then,
and it is no more persuasive as reframed in the Caruso
Declaration.  There is no basis in the record to find that
Rossbach did, or even was capable of doing, the maneuvers Caruso
conjures up to explain some of the many discrepancies between
the image Rossbach produced and how iPhones typically function.
Rossbach has failed to show that the evidentiary hearing should

be reopened, a request she does not even make, or that the findings made at the conclusion of the hearing should be revisited.[12]

In opposition to this motion, Rossbach also seeks to distract attention from her fabrication, spoliation, and perjury. She reiterates how Morales harassed her at work and offers additional evidence in support of this claim, including an image of text messages that Morales purportedly sent to one of Rossbach's colleagues in 2015 (the "2015 Messages"). This evidence was not produced to the defendants in discovery and was excluded from the April 22 evidentiary hearing because it was not produced in discovery or even disclosed to the defendants in advance of the hearing. Moreover, the 2015 Messages are not supported by any document from their recipient authenticating them.

---

[12] The Caruso Declaration fails to address many of the indicia of fabrication on which the Court relied at the hearing, including the absence of visible damage in the purported photograph of the text messages and the elements of the image that are inconsistent with the display of text messages on any version of the iPhone OS. Where Caruso does address indicia on which the Court relied, his analysis is often demonstrably faulty. For instance, Caruso premises much of his argument on his contention that versions of the iPhone OS subsequent to version 10 can run on an iPhone 5. But his source for that claim explicitly states that subsequent versions of the OS, such as versions 11 and 12, are incompatible with the iPhone 5 because the iPhone 5 has a 32-bit microprocessor and recent versions of the iPhone OS can be used only on iPhones with 64-bit microprocessors. See https://www.digitaltrends.com/mobile/how-to-get-ios-12/.

Even if Rossbach had laid a proper foundation for consideration of the 2015 Messages, however, they do not suggest that Rossbach should not be sanctioned for her own misconduct in this lawsuit.  The issue presented by the defendants' motion for sanctions is not whether Morales harassed Rossbach or one of her colleagues but is instead whether Rossbach fabricated evidence central to her claims in this litigation.  The evidence of Rossbach's fabrication is overwhelming.

Rossbach also claims that, in holding an evidentiary hearing and making findings of fact regarding her fabrication, the Court erred in making credibility determinations reserved for the jury.  This argument may be easily rejected.  A federal district court "has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."  Chambers, 501 U.S. at 44.  That power includes the power to take testimony and reach factual conclusions.  See Liebowitz, 2021 WL 3118938, at *9 (affirming a district court's sanctions order that was based on the district court's independent "review[] of the record and evaluat[ion of] the demeanor of the witnesses at [an] evidentiary hearing").

B.   Monetary Sanctions

A monetary sanction is also imposed against Rossbach pursuant to this Court's inherent power.  Rossbach's willful

25

misconduct in fabricating evidence and destroying evidence of
that fabrication caused the defendants to incur the significant
expense of investigating her actions and litigating the
evidentiary hearing and their motion for sanctions.  At no point
has she expressed remorse for her fabrication, spoliation, and
perjury.  In an effort to "restore the prejudiced part[ies] to
the same position [they] would have been in" absent Rossbach's
misconduct, West v. Goodyear Tire & Rubber Co., 167 F.3d 776,
779 (2d Cir. 1999) (citation omitted), the Court imposes against
Rossbach a sanction in the amount of the defendants' attorneys'
fees, costs, and expenses associated with addressing Rossbach's
fabrication, including the attorneys' fees incurred in
litigating the instant sanctions motion.[13]  See Liebowitz, 2021
WL 3118938, at *13 (noting that the Second Circuit has
repeatedly affirmed monetary sanctions that "include the
attorney's fees incurred in litigating the sanctions motion").

The same monetary sanction is also imposed on Altaras and
DSLG.  In this case, Altaras "negligently or recklessly failed
to perform his responsibilities as an officer of the court."
Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001).  Among

---

[13] Since this attorney's fees sanction is "compensatory rather
than punitive," it may be imposed without the "enhanced
procedural protections associated with criminal procedure."
Liebowitz, 2021 WL 3118938, at *7 (citation omitted).

other obligations imposed by the New York Rules of Professional
Conduct, a lawyer must not "offer or use evidence that the
lawyer knows to be false," and if "the lawyer's client . . . has
offered material evidence and the lawyer comes to know of its
falsity, the lawyer shall take reasonable remedial measures,
including, if necessary, disclosure to the tribunal."  N.Y.
Rules of Prof. Con. 3.3(a)(3).  Lawyers are also forbidden from
"knowingly us[ing] perjured testimony or false evidence" or
"participat[ing] in the creation or preservation of evidence
when the lawyer knows or it is obvious that the evidence is
false."  N.Y. Rules of Prof. Con. 3.4(a).  If a lawyer "knows or
reasonably should know that the representation will result in a
violation of" the Rules of Professional Conduct, the lawyer
"shall withdraw from the representation of a client."  N.Y.
Rules of Prof. Con. 1.16(b)(1).

Corroboration for Rossbach's claim of sexual harassment
rested largely on the three text messages allegedly sent to
Rossbach and received on her iPhone 5.  At many points in this
litigation, Altaras had an opportunity to conduct a reasonable
investigation of his client's claims and to ensure that he was
not misleading either his adversary or the Court.  After the
defendants met with Altaras in February 2021 and presented him
with evidence that Rossbach had fabricated the image, Altaras

had the opportunity and obligation to conduct a reasonable investigation regarding the authenticity of the image and, if necessary, withdraw from his representation of Rossbach to ensure that he was not complicit in the use of false evidence. Similarly, Rossbach provided inconsistent sworn testimony regarding the creation of the image on three occasions -- in her deposition, in the March 19 Declaration, and at the evidentiary hearing -- and Altaras had both the opportunity and the obligation to ensure that his client had not provided perjurious testimony and, if necessary, to withdraw from his representation of Rossbach in order to avoid suborning perjury.  Altaras has not shown that he proceeded responsibly at any of those points. And at no point has he tried to mitigate the harm done by his client.

When this action was filed, Altaras failed to take sufficient steps to ensure that the Rossbach iPhones, and the data stored on them, was preserved, thereby allowing his client to spoliate critical evidence.  Even after the defendants put Altaras on notice that his client had likely fabricated critical evidence in this case, he failed to obtain the correct passcode for the iPhone 5 from Rossbach or to otherwise properly investigate the authenticity of the disputed image.  Ignoring the inconsistencies between her deposition testimony and her

subsequent sworn testimony and the implication that his client had committed perjury at her deposition, he filed her false March 19 Declaration with the Court and then elicited more false testimony from Rossbach at the evidentiary hearing.  In advance of the hearing, he submitted an expert declaration that was largely unresponsive to the evidence of his client's fabrication.  At the evidentiary hearing and in the context of this motion, he attempted to introduce evidence of questionable provenance that had not been produced during discovery or even before the hearing.  This was an unprofessional attempt to sandbag his adversary.  Prior to the evidentiary hearing, he also filed a frivolous motion for sanctions against the defendants, and in the wake of the evidentiary hearing, he improperly sought to relitigate issues that should have been addressed at the hearing.

Altaras also "unreasonably and vexatiously" multiplied proceedings in this case.  28 U.S.C. § 1927.  Even after he was made aware that his client had likely fabricated evidence, he made no serious effort to investigate the allegations, and if necessary to withdraw from his representation of his client. Instead, even after he should have realized that Rossbach's complaint was based on her false allegations, he stood by the complaint.  He submitted to the Court his client's false

Declaration and a largely speculative expert declaration that did not address key evidence of fabrication identified by the defendants' expert.  He also submitted a frivolous motion for sanctions against the defendants which necessitated a response from the defendants.

In his defense, Altaras asserts that he advised Rossbach of her duty to preserve evidence at the beginning of this case, that no one can be blamed for spoliation of the iPhone 5 because the iPhone 5 suffered a cracked screen when it fell on the floor and it was this damage to the iPhone 5 (as opposed to the failure to provide the correct password) that prevented Consilio from conducting a forensic examination of the iPhone 5, and that the defendants should have requested access to the iPhone X before Rossbach exchanged it for a new iPhone.  Altaras further asserts that Rossbach's conflicting testimony was not evidence of perjury or willful misconduct, but instead a clarification, and in any event can only be assessed for its honesty by a jury. But for the reasons described above, none of these arguments is responsive to the issues at stake here.  If anything, they suggest that Altaras still fails to understand the nature of his obligations as an officer of the court.

In short, at every step of these proceedings, Altaras failed to take reasonable steps to preserve critical evidence

and failed to recognize the gravity of his client's misconduct and its implications for his own duties.  He instead burdened the defendants and this Court by suborning his client's perjury and making frivolous and procedurally improper legal and factual arguments.  A monetary sanction against Altaras and DSLG is warranted,[14] and the Court imposes a monetary sanction under its inherent power and § 1927.  As with the monetary sanction against Rossbach, the monetary sanction shall be in the amount of the defendants' attorneys' fees, costs, and expenses associated with addressing Rossbach's misconduct.

## Conclusion

The Court dismisses this action with prejudice as an exercise of its inherent power to sanction and pursuant to Fed. R. Civ. P. 37(e).  A monetary sanction in the amount of the defendants' attorneys' fees, costs, and expenses associated with addressing Rossbach's fabrication is also assessed jointly and severally against Rossbach, Altaras, and DSLG as an exercise of

---

[14] In a strikingly similar recent case, another court in this District imposed monetary sanctions against DSLG after an attorney affiliated with the firm facilitated a client's misrepresentations to the court and failed to correct or investigate those misrepresentations even after they were brought to the attorney's attention.  Doe v. East Side Club, LLC, No. 18cv11324 (KPF), 2021 WL 2709346, at *21-25 (S.D.N.Y. July 1, 2021).  This repeated misconduct provides further support for the imposition of a significant monetary sanction against DSLG.

the Court's inherent power and 28 U.S.C. § 1927.  A scheduling
order addressing the calculation of the monetary sanction
accompanies this Opinion.

Dated:    New York, New York
          August 5, 2021

                                    _____
                                         DENISE COTE
                             United States District Judge